UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE ORTEGA HERNANDEZ,
*on behalf of themselves,*
*FLSA Collective Plaintiffs and the Class*

                Plaintiff,

       -against-

NHR HUMAN RESOURCES, LLC, NEW
HOLLAND RESIDENCES, LLC, SUGAR HILL
CAPITAL PARTNERS LLC, MARGARET
GROSSMAN, and JEREMY SALZBERG,

                Defendants.

Docket No.: 20-cv-03109-PGG-DCF

---

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION AND FOR COURT FACILITATION OF NOTICE PURSUANT TO 29 U.S.C. § 216(b)

CLIFTON BUDD & DeMARIA, LLP
Attorneys for the Defendants
The Empire State Building
350 Fifth Avenue, Suite 6110
New York, New York 10118
Tel.: (212) 687-7410

Counsel:
Daniel W. Morris
Ian-Paul A. Poulos

## TABLE OF CONTENTS

Table of Authorities.............................................................................................................ii

Preliminary Statement.........................................................................................................1

Factual Background and Procedural History .....................................................................2

Argument ...........................................................................................................................7

    1.    Hernandez did not allege facts demonstrating he is similarly
situated to the purported collective class. ................................................................7

        A.    Second Circuit courts refuse to conditionally certify a class
based on a single declaration with co-worker conversations
like Hernandez's...........................................................................................9

        B.    Hernandez is not similarly situated because he asserts
unique claims that differentiate him from the putative class. ....................11

        C.    Hernandez failed to demonstrate a common scheme or plan
of alleged wage violations spanning all Defendants'
residential buildings. ..................................................................................12

        D.    Even if the Court were to certify a collective class (it
should not), only the buildings Hernandez identifies as his
own must be included. .................................................................................13

        E.    Hernandez failed to demonstrate a common scheme or plan
of alleged wage violations because he was not entitled to
spread-of-hours pay.....................................................................................13

        F.    Hernandez failed to demonstrate a common scheme or plan
of alleged wage violations because his timesheets show he
was paid overtime. ......................................................................................15

        G.    Hernandez failed to show he has personal knowledge of
other job classes. ........................................................................................15

    2.    Plaintiff's plan for notice and distribution must be rejected because
its scope and content are impermissibly overbroad and the manner
of proposed delivery is inappropriate. ....................................................................16

    3.    Hernandez's request for the putative class' contact information is
overbroad. ...............................................................................................................19

    4.    The Court should not grant equitable tolling. .........................................................19

Conclusion ........................................................................................................................22

## Table of Authorities

**Cases**                                                                                                    **Page(s)**

*Almonte v. 437 Morris Park, LLC*,
  2015 WL 7460019 (S.D.N.Y. Nov. 24, 2015) ............................................................... 14, 15

*Boice v. M+W U.S., Inc.*,
  130 F. Supp. 3d 677 (N.D.N.Y. 2015) ............................................................................. 14

*Colozzi v. St. Joseph's Hosp. Health Ctr.*,
  595 F. Supp. 2d 200 (N.D.N.Y. 2009) ............................................................................. 19

*Contrera v. Langer*,
  278 F. Supp. 3d 702 (S.D.N.Y. 2017) ............................................................................. 20

*Contrera*,
  278 F. Supp. 3d at 824 ...................................................................................................... 21

*Da Silva Moore v. Publicis Groupe*,
  868 F. Supp. 2d 137 (S.D.N.Y. 2012) ............................................................................. 19

*Eng-Hatcher v. Sprint Nextel Corp.*,
  2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009) ................................................................... 16

*Fu v. Mee May Corp.*,
  2016 WL 1588132 (S.D.N.Y. Apr. 20, 2016) ..........................................................7, 9, 16

*Garcia v. Spectrum of Creations Inc.*,
  102 F. Supp. 3d 541 (S.D.N.Y. 2015) ............................................................................. 17

*Gomez v. Kitchenette 123 Inc.*,
  2017 WL 4326071 (S.D.N.Y. Sept. 5, 2017) ................................................................. 9, 12

*Guillen v. Marshalls of MA, Inc.*,
  750 F. Supp. 2d 469 (S.D.N.Y. 2010) ............................................................................... 7

*Guzelgurgenli v. Prime Time Specials Inc.*,
  883 F. Supp. 2d 340 (E.D.N.Y. 2012) ............................................................................. 17

*Hamadou v. Hess Corp.*,
  915 F. Supp. 2d 651 (S.D.N.Y. 2013) ............................................................................. 13

*Hintergerger v. Catholic Health Sys.*,
  2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009) ................................................................... 20

*Hoffmann v. Sbarro, Inc.*,
  982 F. Supp. 249 (S.D.N.Y. 1997) ..................................................................................... 7

*Jeong Woo Kim v. 511 E. 5th St., LLC*,
  985 F. Supp. 2d 439 (S.D.N.Y. 2013) ..........................................................2, 3, 4, 6

*Knox v. John Varvatos Enterprises Inc.*,
  282 F. Supp. 3d 644 (S.D.N.Y. 2017) ............................................................................. 20

*Lee v. ABC Carpet & Home*,
  236 F.R.D. 193 (S.D.N.Y. 2006) ..................................................................................... 20

*Lujan v. Cabana Mgmt., Inc.*,
  2011 WL 317984 (E.D.N.Y. Feb. 1, 2011) ....................................................................... 14

*Mata v. Foodbridge LLC*,
  2015 WL 3457293 (S.D.N.Y. June 1, 2015) ..........................................................8, 9, 10, 12, 16

*McGlone v. Contract Callers, Inc.*,
  867 F. Supp. 2d 438 (S.D.N.Y. 2012) ............................................................................... 8

*Menominee Indian Tribe of Wisconsin v. United States*,
  136 S. Ct. 750 (2016) ...................................................................................................... 20

*Morangelli*,

2010 WL 11622886 (collecting cases) ............................................................... 18

*Morris v. Lettire Const., Corp.,*
896 F. Supp. 2d 265 (S.D.N.Y. 2012) .......................................................... 17

*Myers v. Hertz Corp.,*
624 F.3d 537 (2d Cir. 2010)...................................................................... 7, 8

*Pace v. DiGuglielmo,*
544 U.S. 408 (2005) .................................................................................... 20

*Prizmic v. Armour, Inc.,*
2006 WL 1662614 (E.D.N.Y. June 12, 2006) ............................................ 7

*Ramos v. PJJK Rest. Corp.,*
2016 WL 1106373 (S.D.N.Y. Mar. 10, 2016) ........................................... 21

*Reyes Cruz v. 70-30 Austin St. Bakery Inc.,*
2019 WL 1929910 (S.D.N.Y. May 1, 2019) ............................................... 9

*Reyes v. Nidaja, LLC,*
2015 WL 4622587 (S.D.N.Y. Aug. 3, 2015)......................................... 8, 12

*Romero v. La Revise Assocs., L.L.C.,*
968 F. Supp. 2d 639 (S.D.N.Y. 2013) ..................................................... 8, 17

*Sanchez v. JMP Ventures, L.L.C.,*
2014 WL 465542 (S.D.N.Y. Jan. 27, 2014) ............................................. 10

*Scott v. Chipotle Mexican Grill, Inc.,*
954 F.3d 502 (2d Cir. 2020)...................................................................... 11

*Seever v. Carrols Corp.,*
528 F. Supp. 2d 159 (W.D.N.Y. 2007)...................................................... 13

*Shibetti v. Z Rest., Diner & Lounge, Inc.,*
2020 WL 4572064 (E.D.N.Y. Aug. 7, 2020) ............................................ 11

*Taveras v. D & J Real Estate Mgmt. II, LLC,*
324 F.R.D. 39 (S.D.N.Y. 2018) ........................................................... 13, 16

*Viriri v. White Plains Hosp. Med. Ctr.,*
320 F.R.D. 344 (S.D.N.Y. 2017) .............................................................. 21

*Wallace v. Kato,*
549 U.S. 384 (2007)................................................................................... 20

*Whitehorn v. Wolfgang's Steakhouse, Inc.,*
767 F. Supp. 2d 445 (S.D.N.Y. 2011) ...................................................... 19

## Statutes

29 U.S.C. § 216(b) ............................................................................................ 1, 7

## Regulations

12 NYCRR § 141 ...............................................................................................14

**Preliminary Statement**

Defendants NHR Human Resources, LLC ("NHR Human Resources"), New Holland Residences, LLC ("New Holland"), Sugar Hill Capital Partners LLC ("Sugar Hill"), Margaret Grossman ("Grossman"), and Jeremy Salzberg ("Salzberg") (collectively, "Defendants") respectfully submit this memorandum of law in opposition to Plaintiff's Motion for Conditional Collective Certification and for Court Facilitation of Notice Pursuant to 29 U.S.C.A. § 216(b) ("Motion").

Plaintiff Jose Ortega Hernandez ("Hernandez") seeks conditional certification of a collective action pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA") and Court-facilitated notice of this lawsuit as to "all current and former non-exempt employees, including all porters, handymen, supers, and maintenance persons employed by Defendants on or after the date that is six (6) years before the filing of the Complaint." *See* ECF Doc. 35, at § I.[1]

Hernandez brings this lawsuit and motion despite having recorded his time worked on handwritten timesheets and signed the hours that he submitted each week, certifying that the time reflected was an accurate representation of all hours worked during the relevant weekly period. He also, assumes, without evidence, that the Defendants uniformly directed all their porters, handymen, supers, and maintenance persons in all of the buildings they manage or own to "only put 40 hours on their time-sheets per week," while requiring Plaintiff and others to work uncompensated prior to and/or after their scheduled shifts. *See* ECF Doc. 35, at § III. Plaintiff expects this Court to simply take him at his conclusory and

---

[1] In his Preliminary Statement, Plaintiff asserts that he is suing on behalf of "all non-exempt construction workers," but since the Defendants are not engaged in the business of construction, they do not specifically address this aspect of the Plaintiff's Motion and hereby reiterate the arguments included herein against any claim that "construction workers" may be conditionally certified in this action.

unsubstantiated word that he and an unstated number of unnamed employees from an unstated number of buildings were subject to this alleged policy. His support is a single affidavit that rings of empty catchphrase generalizations concerning four other superintendents only identified by first name. Plaintiff's Motion must be denied for four reasons.

First, Hernandez did not allege facts demonstrating he is similarly situated to the purported collective class. His assertions are conclusory, pertain to a fraction of the collective class he seeks to certify, and cover a geographic region that is broader than Hernandez's personal knowledge of the facts. He also failed to assert facts demonstrating Defendants have an unlawful pay policy. Hernandez was not entitled to spread-of-hours premiums as a matter of law, and his timesheets show that Hernandez was paid overtime according to his timesheets. Second, Hernandez's plan for notice and distribution must be rejected because it is improper as drafted. Third, Hernandez's request for the putative class' contact information is overbroad. Fourth, the Court should not grant equitable tolling because there is nothing extraordinary warranting that kind of relief.

For these reasons, and as outlined below, the Plaintiff's Motion should be denied in its entirety.

## Factual Background and Procedural History

For the purposes of this motion, Defendants assume, as they must, that Hernandez's allegations are true.[2] Hernandez commenced this action on behalf of himself and as a

---

[2] This Court has ruled that "a defendant may not defeat the plaintiff's motion [for conditional certification] by presenting conflicting factual assertions." *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 446 (S.D.N.Y. 2013). For this reason, the Defendants oppose Plaintiff's Motion using the one-sided factual information set forth in the Complaint and the documents Hernandez submitted in support of his Motion, including his declaration. Defendants will dispute Plaintiff's factual assertions at the proper juncture as this litigation progresses.

representative of a putative class of similarly situated employees against Defendants for their alleged failure to pay a minimum wage, overtime, and costs associated with the purchase and maintenance of work tools. Distinguishing himself from the putative class, Hernandez also lodges claims under the National Labor Relations Act ("NLRA") and New York Labor Law ("NYLL") for retaliatory termination. *See* ECF Doc. 1, at ¶¶ 69-78. Hernandez worked as a residential building superintendent / live-in janitor. *See* ECF Doc. 30, at ¶ 30.

At all relevant times, NHR Human Resources was his employer. *See* ECF Doc. 35-4, at Pg. 2 (noting that Plaintiff resigned from his "employment at New Holland Residences HR LLC"). New Holland and Sugar Hill are real estate and property management companies. Grossman is the Managing Partner and President of Sugar Hill.[3] Salzberg is Sugar Hill's Managing Partner and Co-Chief Investment Officer.[4] Although these individual defendants are generally aware of the corporate Defendants' structure, there is no evidence they were involved in the day-to-day operations of the business as it pertains to Hernandez's terms and conditions of employment or that he, or they, had any interaction with Salzberg or Grossman.

Defendants are not Hernandez's joint employers, yet Hernandez claims that the Defendants are a "single integrated enterprise" simply because they operate buildings throughout New York City. *See* ECF Doc. 35, at ¶ II. According to the Complaint, Hernandez worked for the Defendants as a superintendent for "a number" of buildings from December 10, 2018, until October 11, 2020. *See* ECF Doc. 1, at ¶ 30. He was scheduled to

---

[3] *See Leadership*, Sugar Hill Capital Partners (last visited November 18, 2020), *available at* https://www.sugarhillre.com/#team.

[4] *See id.*

work from 8:00 a.m. to 5:00 p.m. for five of seven days, totaling forty (40) hours of scheduled time when accounting for one hour of lunch. *See* ECF Doc. 1, at ¶ 31. During this timeframe, Hernandez says he was assigned to maintain seven buildings.[5] *See* ECF Doc. 37, at ¶ 4. From his start date until December 31, 2018, Hernandez was paid $13.50 per hour. *See* ECF Doc. 1, at ¶ 36. This increased to $15 per hour until May of 2019, which is when he received a raise to $18 per hour until his resignation. *See id.*

Factual allegations that plausibly support this case as a class or collective action are notably absent from the Complaint. Hernandez certainly includes buzzwords that mirror relevant legal standards, but he failed to provide any factual backing to his class and collective allegations. For example, in his Complaint, Plaintiff does not assert any specifics about his purported conversations with others concerning terms or conditions of employment, nor does he assert any facts about a company—or even a property—wide policy tied to the alleged wage-and-hour violations. Instead, Hernandez only presents facts that are uniquely his own. Using the singular tense, he explains that "<u>Plaintiff</u> attempted to help organize a union.…[to] address[] Defendants' [allegedly] illegal policies of not compensating workers for all the hours worked." *See* ECF Doc. 1, at ¶ 38 (emphasis added). He states that "<u>Plaintiff</u> was often compensated at a rate less than minimum wage." *See* ECF Doc. 1, at ¶ 35 (emphasis added). He furthermore asserts that "<u>Plaintiff</u> would [allegedly] attempt to fill out timesheets indicating these extra hours worked, but [he] was informed that he could not put those extra hours on timesheet as Defendants did not pay overtime." *See* ECF Doc. 1, at ¶33 (emphasis added). Now that he seeks to conditionally

---

[5] Hernandez claims he was assigned to the following buildings: 301 W 113th Street, New York, New York 10026; 305 W 113th Street, New York, New York 10026; 307 W 113th Street, New York, New York 10026; 309 W. 113th Street, New York, New York 10026; 300 W. 114th Street, New York, New York, 2099 8th Avenue, New York, New York 10026; and 2107 8th Avenue, New York, New York 10026. *See* ECF Doc. 37, at ¶ 4.

certify this case as a collective action, he musters vague allegations in his own conclusory, self-serving declaration.

Even these factual allegations, when read together with timesheets Hernandez himself submitted, do not make sense. He asserts that there was a common scheme of forcing employees to only write forty hours in their weekly timesheet. But Hernandez's attempts to show a pervasive, unlawful policy unwinds at the seams: his own signed timesheets show that he recorded overtime hours and was paid overtime wages. *See* ECF Doc. 35-2.

His declaration boldly asserts that Defendants' "non-management employees" were subject to the "same wage and hour" policies, which coincides with his attempt to include all "porters, handymen, supers, and maintenance persons" across all the corporate Defendants' properties in the collective action. *See* ECF Doc. 37, at ¶ 1-2. But Hernandez is only able to muster facts concerning four other "co-workers" identified by first name—all of whom were superintendents. No other job categories are reflected in support of his collective action claims. *See* ECF Doc. 37, at ¶ 2.

Analyzing the sworn observations in his declaration (as opposed to the unverified Complaint), Hernandez has little personal knowledge of others' working conditions. In five pages and nearly twenty paragraphs, Hernandez does not (because he cannot) approximate the number of hours other superintendents worked. He says, "me and my coworkers [were] on call all day and would have hours of afterhours work to perform." *See* ECF Doc. 36, at ¶ 6. But he does not state what "afterhours" entailed. His best approximation, which is concededly couched as a concession, is that "subject to a few exceptions" "all" his co-workers suffered "similar harm" and "worked similar real hours" to Hernandez. *See* ECF Doc. 37, at ¶ 11. In other words—there is no common policy or practice of wage-and-hour violations: Hernandez admits there were "exceptions."

Even Hernandez's clearest co-worker-related allegation falls flat. Being told by management "to only put 40 hours per week [on a timecard], even though [Hernandez] and [his] co-workers are on call all day and would have hours of afterhours work to perform," does not allege an illegal wage-and-hour practice. *See* ECF Doc. 37, at ¶ 6. Just because management required overtime to be approved and Hernandez felt he had more work than he could handle in forty hours does not mean he was not paid for the time he actually worked. In fact, when discussing his own experience, Hernandez contradicts himself and candidly admits that he was paid for more than forty hours. *Compare* ECF Doc. 37, at ¶ (noting that "<u>almost all weeks</u> I was paid for <u>around</u> forty (40) hours regardless of how long I worked") *with* ECF Doc. 37, at ¶ 3 (claiming that "all this" shoveling, sweeping, and responding to tenant calls took "place after our 40 hour work week" without explaining how often this occurred, where, when, or whether such actions were authorized, voluntary, or required).

In short, Hernandez may have discussed "jobs and issues" with a few other superintendents at an unknown day and time and for unknown occasions, but conclusory allegations in a single declaration like the one Hernandez cobbled together here do not warrant collective action treatment. Bald assertions and conclusory statements aside, Hernandez's Motion is premised on a single claim: a handful of other superintendents whose names Hernandez can only partially recall and none of whom provided corroborating declarations complained to him about their "jobs and issues." *Id.* Hernandez offers no other evidence in support of his conclusory claim that he is similarly situated to the broad swath of employees he attempts to represent in a single collective action asserted under the FLSA. Under these circumstances, Plaintiff's Motion must be denied in its entirety.

**Argument**

**1.  Hernandez did not allege facts demonstrating he is similarly situated to the purported collective class.**

Section 216(b) of the FLSA permits an employee to sue an employer on behalf of himself and "similarly situated" others through a "collective action" so long as a "consent" opting-in to the action is filed with the Court. *See* 29 U.S.C.A. § 216(b). Certification of a "collective action" in the Second Circuit is a two-step process. *See Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010). Initially, the court must make a determination "to send notice to potential opt-in plaintiffs who may be 'similarly situated.'" *Id.* Neither the FLSA nor its regulations define what it means to be "similarly situated," but courts have held that plaintiffs must show they and the putative collective class are "victims of a common policy or plan that violated the law." *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997). Although the factual burden at this stage is a "modest" one, *Id.* it is important and certainly "not automatic." *Fu v. Mee May Corp.*, No. 15 CIV. 4549 (KPF), 2016 WL 1588132, at *2 (S.D.N.Y. Apr. 20, 2016). This is because, absent the required showing, "an employer may be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense." *Prizmic v. Armour, Inc.*, No. 05-CV-2503(DLI)(MDG), 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006). "[E]ven if modest," the factual showing "must still be based on some substance," *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010), and a "plaintiff must provide some actual evidence of a factual  nexus between him and the rest of the class he seeks to represent; conclusory allegations will not suffice." *Reyes v. Nidaja, LLC*, No. 14 CIV. 9812, 2015 WL 4622587, at *2 (S.D.N.Y. Aug. 3, 2015). "Declarations submitted in connection with motions for certification must allege facts showing such a nexus, not mere statements that others are similarly situated." *Id.* Plaintiff's personal knowledge and experience is crucial to establishing this nexus. *See*

*Mata v. Foodbridge LLC*, No. 14 CIV. 8754 ER, 2015 WL 3457293, at *2 (S.D.N.Y. June 1, 2015). Although the court will not settle factual disputes, because its focus at this stage is "not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' with respect to their allegations," *Romero v. La Revise Assocs., L.L.C.*, 968 F. Supp. 2d 639, 644–645 (S.D.N.Y. 2013), it will "examine the pleadings and affidavits to determine whether the named plaintiffs and putative class members are similarly situated." *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012). "If the Court finds that they are, it will conditionally certify the class and order that notice be sent to the potential class members." *Mata*, 2015 WL 3457293, at *3. When this "modest" standard is applied in this case, Plaintiff's conclusory and unsubstantiated Motion must be denied.

In the second stage, after discovery has been completed and with the benefit of a fuller record, the district court will determine whether the collective action may proceed by deciding "whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555. If not, the opt-in plaintiffs' claims will be "de-certified" and dismissed without prejudice. *Id.* at 555.

In this case, Hernandez's Complaint is conclusory and does not provide any detail that would even come close to meeting the modest standard required by the FLSA. Further, Hernandez's conclusory and self-serving assertions in his declaration do not bring any additional substance to bear. Even a superficial review of Hernandez's declaration reveals that he failed to provide the detailed allegations or personal accounts necessary to succeed on the instant Motion. Rather, Hernandez relies exclusively on vague assertions unconnected to any common unlawful policy he attempted to verbalize. Because Plaintiff's nonchalant declaration flouts the already modest collective action standards, his Motion must be denied.

## A. Second Circuit courts refuse to conditionally certify a class based on a single declaration with co-worker conversations like Hernandez's.

A "plaintiff cannot simply state his belief that others are similarly situated based on conversations with or observations of those other potential opt-in members; rather, he must supply additional detail regarding the particular conversations or observations substantiating that belief." *Fu*, 2016 WL 1588132, at *2. Where the only evidence offered in support of plaintiff's collective action motion is his own declaration, "that affidavit is insufficient to meet even the low evidentiary threshold required for conditional certification" where the "affidavit does not provide any detail as to a single such observation or conversation, such as when or where the observations or conversations took place." *Reyes Cruz v. 70-30 Austin St. Bakery Inc.*, No. 18CIV7408PAEHBP, 2019 WL 1929910, at *4 (S.D.N.Y. May 1, 2019) (denying motion for conditional certification). Relying on a single affidavit, without corroboration, changes the focus of the court's inquiry because the "level of detail in that affidavit becomes particularly important in evaluating the sufficiency of the plaintiff's showing." *Gomez v. Kitchenette 123 Inc.*, No. 16-CV-3302 (AJN), 2017 WL 4326071, at *4 (S.D.N.Y. Sept. 5, 2017); *Mata*, 2015 WL 3457293, at *4 (noting that "details are particularly important where a conditional certification motion is based on the lone affidavit of a single employee, who performed a single job function"). Knowing details such as "where or when" the observations or conversations plaintiff is using to support his motion is required because, otherwise, the court will not be able to access the "appropriate scope of the proposed class and notice process." *Sanchez v. JMP Ventures, L.L.C.*, No. 13 CIV. 7264 KBF, 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) (denying plaintiff's motion for conditional certification).

District Courts in the Second Circuit have repeatedly found a single affidavit (like Hernandez's) insufficient to grant a motion for conditional certification. For example, in

*Mata*, 2015 WL 3457293, this Court faced an affidavit like the declaration here. In *Mata*, 2015 WL 3457293, the plaintiff worked only as a pizza counterperson, and just as Hernandez, he listed the names and titles of seventeen coworkers—including preparers, pizza men, counter persons, and others whom he observed doing work the same or similar to his own. *See Mata*, 2015 WL 3457293, at *3. In denying Plaintiff's motion for conditional certification, the Court explained that Plaintiff's declaration focused mostly on "his own employment and compensation" and that the "observations and conversations with other employees" were insufficient without "concrete facts." *Id.* at 3–4.

The same result befell the plaintiff in *Sanchez*. As here, the plaintiff in *Sanchez* submitted a single affidavit (his own) that described "observations" and "conversations" with co-workers without providing "*any* detail as to a *single* such observation or conversation." *Sanchez*, 2014 WL 465542, at *1–2. The Court emphasized that the "list of generalized allegations" read more like a complaint than what was necessary to meet the similarly situated inquiry. *See id.*

Hernandez's declaration bears the same shortcomings as the affidavits in *Mata* and *Sanchez*. Hernandez identifies four other superintendents by their first name. *See* ECF doc. 37, at ¶ 2. They would occasionally cross paths at a building, which is where they would talk about "jobs and issues." *See* ECF Doc. 37, at ¶ 5. Hernandez furthermore asserts that "me and my co-workers were always on call and had to shovel show [sic], sweep the sidewalks, respond to tenant calls, answer doors for police and firemen, etc., and all of this would occur after our shifts were done." ECF Doc. 37, at ¶ 3. But nowhere does Hernandez provide any *details* about these issues. His descriptions are not framed within any particular time window. There is no description of the number of hours beyond forty he or his co-workers had to work. He does not explain if these issues affected some of his co-

workers more than others, nor does he explain how frequently these extra hours would be required. At best, Hernandez estimates that his co-workers, "subject to a few exceptions" worked "similar real hours" to Hernandez. *See* ECF Doc. 37, at ¶ 11. In short, Hernandez failed to provide any details required for the Court to grant his Motion. For this reason, he has not met the modest burden courts in this Circuit use to certify a collective action, and his Motion should be denied.

### B. Hernandez is not similarly situated because he asserts unique claims that differentiate him from the putative class.

In addition to his FLSA claims, Hernandez asserts retaliation claims under the NLRA and NYLL that are unique to him. For the former, he claims that the Defendants "retaliated against [him] after he attempted to set up a union." *See* ECF Doc. 1, at ¶ 70. For the latter, he claims that the Defendants "retaliated against [him] after he complained to the Department of Labor regarding their underpayment of compensation for all his hours worked[.]" *See* ECF Doc. 2, at ¶ 75. Collective certification can only be achieved "to the extent that the named plaintiffs and opt-in plaintiffs share one or more issues of law or fact that are material to the disposition of their FLSA claims." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 516 (2d Cir. 2020). *See Shibetti v. Z Rest., Diner & Lounge, Inc.*, No. 18-CV-856 (BMC), 2020 WL 4572064, at *4 (E.D.N.Y. Aug. 7, 2020) (noting that the "Second Circuit has not weighed in on whether FLSA claims can be brought together with discrimination claims"). While Hernandez claims that underpayment is sufficient to maintain a collective action, his NLRA and NYLL retaliation claims are intertwined with this wage claims, and these claims are unique to him. For this reason, Hernandez is not similarly situated to the rest of the putative class for whom he does not assert retaliation claims.

## C. Hernandez failed to demonstrate a common scheme or plan of alleged wage violations spanning all Defendants' residential buildings.

"Specificity in an affidavit is of special importance when a plaintiff who himself held only one job title at fewer than all of the defendant's establishments seeks to conditionally certify a collective comprising multiple job titles at multiple locations." *Gomez*, 2017 WL 4326071, at \*4. Courts routinely decline to certify collectives involving multiple job titles and locations relying on a single plaintiff's affidavit "when that affidavit did not provide sufficient, specific details to justify such a broad collective." *Id*. There is a "consensus in this district that where a plaintiff bases an assertion of a common policy on observations of coworkers or conversations with them, he must provide a minimum level of detail regarding the contents of those conversations or observations." *Reyes*, 2015 WL 4622587, at \*3.

For example, in *Mata*, plaintiff's motion for collective certification was denied because even though Plaintiff asserted that he worked for both of defendants' restaurants, he provided "no factual support demonstrating knowledge of a common scheme impacting the diverse array of employees covered in his Complaint." *See Mata*, 2015 WL 3457293, at \*3.

Here, Hernandez has not alleged enough concrete facts demonstrating that there was a common policy of wage-and-hour violations spanning across all of Defendants' residential properties. Hernandez also does not explain whether his manager also managed other buildings. *See* ECF Doc. 37, at ¶ 6. *Cf. Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 174 (W.D.N.Y. 2007) (denying conditional class certification because "the FLSA violations alleged by plaintiffs were…unilateral acts by a few 'rogue' managers"). He does not provide any locations or other context for the observations and interactions with his co-workers that he describes. Furthermore, Hernandez does not articulate **any** specific wage-and-hour violations at **any** particular building.

**D.  Even if the Court were to certify a collective class (it should not), only the buildings Hernandez identifies as his own must be included.**

Even if the Court were to grant Plaintiff's Motion, it should only certify a conditional collective in the buildings where Hernandez worked. This is because "[c]ourts have repeatedly denied conditional certification of a statewide class (or a nationwide class) where plaintiffs have alleged a *de facto* unlawful policy exists, but have only presented facts pertinent to several locations in a particular region." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 666–67 (S.D.N.Y. 2013) (denying statewide conditional certification). In his declaration, Hernandez identifies the seven buildings that he was assigned to maintain. *See* ECF Doc. 37, at ¶ 4. *See also*, *supra* note 5. Since Hernandez could only have personal knowledge about his experiences at the seven buildings to which he was assigned, the Court should only certify collective class of superintendents who worked at these buildings in the event Plaintiff's Motion is granted. *See, e.g.*, *Taveras v. D & J Real Estate Mgmt. II, LLC*, 324 F.R.D. 39, 41 (S.D.N.Y. 2018) (holding that "Plaintiffs' allegations are too conclusory to demonstrate that porters and superintendents at locations other than where Plaintiffs worked are or may be similarly situated."); *Lujan v. Cabana Mgmt., Inc.*, No. 10-CV-755 ILG, 2011 WL 317984, at *4–9 (E.D.N.Y. Feb. 1, 2011) (conditionally certifying employee at three New York restaurants based on declarations from workers representing each location, but declining to certify employees at the three Florida restaurants because the Court lacked "firsthand evidence of violations").

**E.  Hernandez failed to demonstrate a common scheme or plan of alleged wage violations because he was not entitled to spread-of-hours pay.**

To succeed on his Motion, Hernandez must provide more than mere conclusory allegations that "he and other employees were subject to a common policy or practice." *Boice v. M+W U.S., Inc.*, 130 F. Supp. 677, 695 (N.D.N.Y. 2015) (collecting cases denying

certification for conclusory allegations of a common policy). But Hernandez cannot make this showing because, as a building service worker, he was not entitled to the pay premiums from which he claims to have been deprived.

Hernandez attempts to lump himself with other employees who he alleges were entitled to spread-of-hours pay "for hours lasting longer than ten (10) hours." *See* ECF Doc. 37, at ¶ 14. In fact, he gratuitously writes in bolded letters that Defendants' records show Plaintiff was not paid a spread-of-hours premium. *See* ECF Doc. 35, at Pg. 12-13 & ECF Doc. 37, at ¶ 14. But superintendents are subject to the Wage Order for the Building Service Industry. *See* 12 NYCRR § 141 *et seq.* As such, Hernandez was not entitled to spread-of-hours pay as a matter of law. *See Almonte v. 437 Morris Park, LLC*, No. 14 CIV. 5951 (KPF), 2015 WL 7460019, at *3 (S.D.N.Y. Nov. 24, 2015) (granting summary judgment for defendants for spread-of-hours cause of action). Hernandez's emphasis on spread-of-hours pay is irrelevant and misguided.

The Building Service Order protects the employees of "any person, corporation or establishment engaged in whole or in part in renting, servicing, cleaning, maintaining, selling, or managing buildings or building space." 12 NYCRR § 141-3.1(a). In this case, it is undisputed that the Defendants are engaged in maintaining and managing building space. *See* ECF Doc. 28, at ¶ 7 (admitting in their answer that "NHR Human Resources, New Holland, and/or Sugar Hill…operate buildings in New York City"). Furthermore, Hernandez admits that he worked as a "superintendent for a number of Defendants' buildings and apartments." *See* ECF Doc. 1, at ¶ 30. Therefore, Hernandez was "covered by the Building Service Order, which does not require employers to pay any spread-of-hours premium to employees." *Almonte*, 2015 WL 7460019, at *3. For this reason, Hernandez cannot maintain a spread-of-hours claim in this litigation, which also means that he cannot assert that other allegedly similarly situated employees were subjected to an illegal,

common pay policy involving spread of hour pay. No such allegedly illegal policy or scheme existed because, as building service workers, Hernandez and his allegedly similarly situated counterparts were not entitled to spread-of-hours pay.

**F.   Hernandez failed to demonstrate a common scheme or plan of alleged wage violations because his timesheets show he was paid overtime.**

Aside from not being entitled to the spread-of-hours pay that he claims, Hernandez also failed to show a policy of unlawful wage practices. He claims that he was forced to log exactly forty hours per week, and he submitted timesheets that he purports demonstrate this practice. But Hernandez's timesheets show that he was paid for overtime when he logged it. *See* ECF Doc. 35-2. Five of the eleven timesheets Hernandez submitted (there are more), reflect overtime hours. If there were truly a policy of forcing employees to document forty hours of work, even if they worked more hours, Hernandez's timesheet would not reflect any overtime hours. *Cf.* ECF Doc. 35-2, at Pg. 12 (wrongly claiming that "Plaintiff was consistently only paid from **exactly** 8:00 a.m. to **exactly** 5:00 p.m.).

**G.   Hernandez failed to show he has personal knowledge of other job classes.**

Hernandez cannot impute his own limited experiences to a proposed class of other job titles. *See Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 CIV 7350, 2009 WL 7311383, at *5 (S.D.N.Y. Nov. 13, 2009) (holding that plaintiff "fails to meet the modest factual showing required by the courts when plaintiff attempts to impute her own limited experience to a nationwide class"). In this Circuit, courts "often restrict the scope of the proposed collective or deny conditional certification because of a failure to identify other co-workers by name and title, provide the specifics of conversations with those employees, or note details of other employees' working conditions and hours." *Taveras*, 324 F.R.D. at 41. The court will deny attempts to certify overly broad collectives without the proper factual support to

demonstrate that plaintiff has "knowledge of a common scheme impacting the diverse array of employees." *See Mata*, 2015 WL 3457293, at *3.

In *Fu*, three delivery workers tried to certify a class of "all non-exempt persons employed by Defendants." *Fu*, 2016 WL 1588132, at *3. Because plaintiffs failed to provide any "factual support demonstrating knowledge of a common scheme impacting the diverse array of employees referenced in the Amended Complaint," this Court denied the plaintiff's motion. *See id.* at 5.

In this case, Hernandez was a superintendent. The other four employees that he mentions in his declaration are also superintendents. *See* ECF Doc. 37, at 2. The only observations and conversations that he mentions throughout his declaration involve these four people—and no one else. Therefore, Hernandez has not alleged any fact to support the claim that there is a common wage-and-hour policy or scheme affecting multiple job classifications. Without this factual predicate, Hernandez's request to conditionally certify a collective must either be denied in its entirety or, in the alternative, limited to superintendents.

## 2.   Plaintiff's plan for notice and distribution must be rejected because its scope and content are impermissibly overbroad and the manner of proposed delivery is inappropriate.

This Court should deny Plaintiff's Motion in its entirety. But even if this Court were to decide that conditional certification is appropriate (it should not), Plaintiff's proposed notice must be rejected because of its scope, content, and manner of proposed delivery. Once the Court authorizes notice to the potential opt-in plaintiffs, "the district courts maintains 'broad discretion' over the form and content of the notice." *Morris v. Lettire Const., Corp.*, 896 F. Supp. 2d 265, 273 (S.D.N.Y. 2012). The goal is "to make as many potential plaintiffs as possible aware of [the] action and their right to opt-in without devolving into a fishing

expedition or imposing undue burdens on the defendants." *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012). There are seven issues with the Plaintiff's proposed notice.

### The Scope of the Notice if Overbroad

First, the notice should not be delivered to those employed within six years of the filing of the Complaint. "Three years is the maximum time period to join an FLSA collective action and no New York state class action has been certified. It would be confusing to employees who are ineligible for the FLSA opt-in class to receive the opt-in notice, which does not relate to any state law claims." *Garcia v. Spectrum of Creations Inc.*, 102 F. Supp. 3d 541, 551 (S.D.N.Y. 2015); *Romero*, 968 F. Supp. 2d at 648 (same). Should this Court grant Plaintiff's Motion, the Defendants respectfully submit that delivering notice to only superintendents who worked in Hernandez's buildings within three years of this Court's decision would be appropriate.

Second, the proposed notice is directed at "all current and former non-exempt employees, including porters handymen, supers, and maintenance workers, employed by Defendants." *See* ECF Doc. 34-1. For the reasons already stated, Plaintiff's collective action definition should be denied in its entirety. But if it is not, this notice should be tailored and directed to only the superintendents that were located at Hernandez's buildings.

Third, the fifth paragraph of the Plaintiff's proposed order should be altered to reflect only the names and addresses of the potential opt-ins—not Plaintiff's overly broad request for information, which is addressed separately below. *See* ECF Doc. 34-1.

### The Method of Distribution is Inappropriate

Fourth, the notice should not be posted "in the Defendants' places of business where Covered Employees are employed." *See* ECF Doc. 34-1, at ¶ 6. First Class Mail is a

commonly accepted form of distribution, and New York district courts have repeatedly refused to require defendants to post collective action notices in their workplaces.

For example, in *Morangelli*, the Court explained that in order to require that defendants post the collective action notice in their workplace, the plaintiff must first show that "other forms of class member notification, primarily first class mail, are insufficient." *Morangelli*, 2010 WL 11622886, at *4 (collecting cases).

### The Timing and Content of the Notice Should be Modified based on Equitable Concerns

Fifth, Defendants respectfully request that they be afforded thirty days—not ten days—to collect and produce any information included in this Court's order.

Sixth, the language concerning attorney's fees will be confusing to the opt-ins. The current version of the notice states that "you do not have to pay any attorney's fees or expenses for this lawsuit." This wrongly implies that if the Court were to award damages, those damages are not subject to Plaintiff's counsel's contingency fee.

Seventh, Defendants request that their counsel's contact information be included on the notice with the contact information for Plaintiff's firm under the "Getting More Information" heading. *See Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011) (holding this request as reasonable).

Given the numerous issues in Plaintiff's proposed notice, the Court should deny Plaintiff's distribution plan and order that the notice be disseminated in a more reasonable manner, as well as direct the parties to negotiate and submit an agreed-upon, revised notice remedying the aforementioned issues, or otherwise bring remaining issues, to the Court within thirty days.

**3.   Hernandez's request for the putative class' contact information is overbroad.**

Hernandez requests that the Defendants produce "names, Social Security numbers, titles, compensation rates, last known mailing addresses, email addresses, [and] all known telephone numbers and dates of employment" for the broad category of employees Plaintiff seeks to certify as a collective. This request for information is overbroad and improper. This Court has said that plaintiffs are "not entitled to discovery about individual potential class members until plaintiffs have moved for and been granted class certification." *Da Silva Moore v. Publicis Groupe*, 868 F. Supp. 2d 137, 169 (S.D.N.Y. 2012), *objections overruled sub nom. Moore v. Publicis Groupe SA & MSL Grp.*, No. 11CIV1279ALCAJP, 2012 WL 12528637 (S.D.N.Y. Nov. 8, 2012). If certification is granted, then courts will usually order production of names and addresses of the collective. *See, e.g., Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (noting that "plaintiffs have no need for the additional, inherently private information sought, including e-mail addresses, telephone numbers, social security numbers, and dates of birth).

**4.   The Court should not grant equitable tolling.**

Hernandez's request for a tolling order must be rejected. The statute of limitations for an FLSA collective action runs for each plaintiff until he or she files a written consent opting into the suit. *See Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 198 (S.D.N.Y. 2006). "Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Wallace v. Kato*, 549 U.S. 384, 396 (2007). The doctrine of equitable tolling is applied on a "case-by-case basis to prevent inequity," and equitable tolling will be applied "where some party has been prevented in some extraordinary way from exercising his rights." *Contrera v. Langer*, 278 F. Supp. 3d 702, 723 (S.D.N.Y. 2017). In the Second Circuit, the party seeking to toll his time "bears the burden of establishing two

elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Importantly, the second prong "is only met where the circumstances that caused a litigant's delay are **both** extraordinary and beyond its control." *Id.* (quoting *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 756 (2016)) (emphasis added).

Where, as here, no information has been provided about the potential plaintiffs and their circumstances, the Court cannot assess whether any potential opt-in plaintiff has diligently pursued his or her rights. Therefore, Plaintiff's request to toll the statute of limitations must be denied. *See Knox v. John Varvatos Enterprises Inc.*, 282 F. Supp. 3d 644, 658 (S.D.N.Y. 2017) (denying equitable tolling because there was "no basis for making a ruling…any current or future opt-in female associates' claims must be equitably tolled given that there has been no showing" of diligence); *Hintergerger v. Catholic Health Sys.*, No. 08-CV-380S, 2009 WL 3464134, at *15 (W.D.N.Y. Oct. 21, 2009) (denying equitable tolling in an FLSA case because "[p]laintiffs here have offered no allegations or proof from which this Court can conclude that a reasonably prudent potential plaintiff would not have known of his or her right to receive overtime pay after 40 hours").

In addition, since equitable tolling is personal to the individual for whom the time will be tolled, the named Plaintiff in this case cannot assert a tolling argument on behalf of an unnamed class. *See Contrera*, 278 F. Supp. 3d at 824 (emphasizing that "a district court must consider whether the person seeking application of the equitable tolling doctrine" can establish both prongs) (emphasis in original).

Moreover, even if Plaintiff could assert facts to support a tolling argument on behalf of a potential class, he has not identified **any** extraordinary circumstances that warrant a

tolling of the statute of limitations. To the extent Hernandez claims that equitable tolling pending a conditional certification motion is commonly granted, he is wrong. "The most common circumstance where equitable tolling might apply to FLSA actions is where the defendant has concealed the existence of a cause of action from the plaintiffs." *Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 355 (S.D.N.Y. 2017). Although some courts have tolled the statute of limitations pending a conditional certification motion, many courts have held that this justification "was not of such a magnitude as to warrant tolling." *Id.* Furthermore, Hernandez's tolling argument based on the alleged "rescinded agreement to mediate" has been raised and rejected before. *See* ECF Doc. 31. *See Ramos v. PJJK Rest. Corp.*, No. 15-CV-5672 (PKC), 2016 WL 1106373, at *5 (S.D.N.Y. Mar. 10, 2016) (denying equitable tolling because plaintiffs' "arguments [were] vague and conclusory" and with "no evidentiary basis as to why equitable tolling is warranted[.]" "Merely contend[ing] that courts 'routinely grant' requests for equitable tolling in FLSA actions" is not enough.).

**Conclusion**

For the reasons set forth above, Defendants respectfully request that this Court deny Plaintiff's Motion in its entirety. Even if the Court grants Plaintiff's Motion, it should deny equitable tolling, limit the notice period, limit production of contact information for the putative class, deny Plaintiff's distribution plan and order that the notice be disseminated in a more reasonable manner, as well as direct the parties to negotiate and submit an agreed-upon, revised notice remedying the aforementioned issues, or otherwise bring remaining issues, to the Court within thirty days.

Dated:     November 23, 2020
           New York, New York

                              Respectfully submitted,
                              Clifton Budd & DeMaria, LLP
                              *Attorneys for Defendants*


                        By: _____
                              Daniel W. Morris
                              Ian-Paul A. Poulos
                              The Empire State Building
                              350 Fifth Avenue, 61st Floor
                              New York, New York 10118
                              Tel.: (212) 687-7410
                              Fax: (212) 687-3285