UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSE ORTEGA HERNANDEZ, | 20cv3109 (PGG) (DF) |
| Plaintiff. | |
| -against- | **MEMORANDUM AND ORDER** |
| NHR HUMAN RESOURCES, LLC, *et al.*, | |
| Defendants. | |

**DEBRA FREEMAN, United States Magistrate Judge:**

In this action, brought putatively as a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"), and as a Rule 23 class action under the New York Labor Law, §§ 195(3), 201-D (the "NYLL"), and referred to this Court for general pretrial supervision (Dkt. 19), plaintiff Jose Ortega Hernandez ("Plaintiff") claims, *inter alia*, that he and others similarly situated were denied overtime pay while employed by defendants NHR Human Resources ("NHR Human Resources"), New Holland Residences, LLC ("New Holland"), Sugar Hill Capital Partners LLC ("Sugar Hill"), Margaret Grossman ("Grossman"), and Jeremy Salzberg ("Salzberg") (collectively, "Defendants").

Currently before this Court are the following three motions:

(1)    Plaintiff's motion, made pursuant to Section 216(b) of the FLSA, by which he seeks conditional certification of a collective of similarly situated employees and asks this Court to facilitate Court-authorized notice, so that the similarly situated employees may opt into his FLSA collective action (Dkt. 34);

(2)    Plaintiff's motion seeking the production of Rule 23 class discovery, as well as the production of e-discovery and certain documents relating to Defendants' employees' alleged efforts to unionize (Dkt. 41); and

1

> (3)   the parties' joint request for an extension of time for
> Plaintiff to move for Rule 23 class certification and to
> complete all remaining discovery in this matter (Dkt. 46).

For the reasons discussed below, Plaintiffs' motions (Dkts. 34, 41) are each granted in

part and denied in part, and the parties' joint request for extensions of time (Dkt. 46) is granted.

## BACKGROUND

### A.   Factual Background

The following facts are taken from the Complaint (Class and Collective Action

Complaint, dated Apr. 17, 2020 ("Compl.") (Dkt. 1)) and the Declaration submitted by Plaintiff

in support of his motion for conditional certification of an FLSA collective (Declaration of

Jose Ortega Hernandez, dated Oct. 20, 2020 ("Hernandez Decl.") (Dkt. 37)).

According to Plaintiff, Defendants own and operate multiple "residential and commercial

buildings and apartments" in New York City that fall under the trade name "New Holland

Residences."  (*See* Compl. ¶ 7.)  Plaintiff alleges that "Defendants' buildings are operated as a

single integrated enterprise," in that (1) the buildings are "commonly owned and/or managed" by

individual defendants Grossman and Salzberg; and (2) "the buildings are engaged in related

activities, share common ownership, have [a] common business purpose, share management,

share tools, and share labor."  (*Id.* ¶¶ 8, 12.)  Plaintiff also pleads that, at all relevant times,

Defendants "engaged in interstate commerce and/or the production of goods for commerce,"

employed at least 11 employees, and had gross annual revenues in excess of $500,000, bringing

them within the coverage of the FLSA, 29 U.S.C. §§ 206(a), 207(a)(1) (*see id.* ¶¶ 52, 54).

Plaintiff further alleges that, at all relevant times, the individual defendants Grossman and

Salzberg each exercised sufficient control over their employees' working conditions to,

themselves, be considered "employers" under the applicable federal and state laws; in particular,

Plaintiff alleges that each of these defendants had "the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule [or] compensation, or terminating or hiring such employees." (*Id.* ¶¶ 13-14.)

With respect to the nature of Plaintiff's work, he alleges in the Complaint that he was employed "to work as a superintendent for a number of Defendants' buildings" from December 10, 2018 until October 11, 2019.[1]  (Compl. ¶¶ 30, 40-41.)  In his Declaration, however, Plaintiff recharacterizes his job to cover more categories of work, stating that, throughout his employment, he worked "as a super/porter/handyman." (Hernandez Decl. ¶ 1.) In both the Complaint and his Declaration, Plaintiff then goes on to allege that, throughout his 11-month employment, he was responsible for maintaining over 70 units (or apartments) in seven of Defendants' buildings in Manhattan. (Compl. ¶ 34; *see also* Hernandez Decl. ¶ 4.) Plaintiff also states that, for a "partial" period of his employment, he "was assigned to the maintenance and repair of a total of 151 units" in Defendants' buildings in Manhattan. (*Id.*; *see also* Hernandez Decl. ¶ 4 (listing a total of 19 buildings in Manhattan to which Plaintiff was, at some point during his employment, sent "on assignment").)

Plaintiff further asserts that, in the course of his employment, he was scheduled to work eight hours per day, five days per week, for a total of 40 hours per week. (*Id.* ¶ 31; *see* Hernandez Decl. ¶ 9.)  Yet, he alleges that, "[i]n reality," he regularly worked 10 hours per day, five days a week, "without breaking for a full hour lunch," and that he "spent an additional three (3) hours on Saturdays, shoveling, sweeping, and disposing of trash" – meaning that he regularly

---

[1] Although it is alleged in paragraph 30 of the Complaint that Plaintiff worked for Defendants until October 11, *2020*, later in that same pleading and in his Declaration, Plaintiff clarifies that his last day of employment was, in fact, October 11, *2019*. (*See* Compl. ¶ 41; *see also* Hernandez Decl. ¶ 1.)

worked 58 hours per week.  (*Id.* ¶ 32; *see* Hernandez Decl. ¶¶ 9-10.)  Although Plaintiff alleges

that he attempted to "mark" all of his hours worked on his weekly timesheets, he was allegedly

informed by his manager that he could not document any number of hours that surpassed

40 hours per week because Defendants did not pay overtime wages.  (*Id.* ¶ 33; *see* Hernandez

Decl. ¶¶ 3, 6.)

With respect to the impact of this alleged policy, Plaintiff asserts in his Declaration that

other employees complained to him that they too were denied overtime pay, despite working in

excess of 40 hours per week.  (Hernandez Decl. ¶¶ 3, 6.)  In particular, he states that:

> Our managers would set up weekly meetings . . . in a basement of
> one of the buildings [where] my co-workers including[] Carlos,
> Glenn, Domingo and Eduardo[] would talk and complain not just
> amongst ourselves, but to our manager, Joel Davis [("Davis")].
> The manager frequently responded to our complaints about lack of
> overtime pay by saying, 'that's how it is here.  If you like it, great,
> if not, you know what to do.'  We would complain about unpaid
> time, and we would also complain because we were not allowed to
> mark our real hours on the timesheets.  They would tell us to only
> put 40 hours per week, even though me and my co[-]workers
> [were] on call all day and would have afterhours work to perform.

(*Id.* ¶ 6.)  According to Plaintiff's Declaration, Carlos, Glenn, Domingo, and Eduardo (each of

whom is identified only by first name) all worked as superintendents in Defendants' buildings in

Manhattan.  (*Id.* ¶¶ 2, 6; *see also id.* at ¶ 3 (Plaintiff stating that he "frequently spoke to Carlos,

Glenn, Domingo[,] and Eduardo about [their] lost wages" and that they all "would often go to the

office to complain to management about this[, but] they were told that 'you must fill out your

timesheets to reflect 40 hours per week only'").)

Plaintiff alleges that, from December 10, 2018 until December 31, 2018, he was paid at a

rate of $13.50 an hour.  (Compl. ¶ 36; *see* Hernandez Decl. ¶ 12.)  Then, "[f]rom January 1, 2019

until on or about May 2019," he was allegedly paid at a rate of $15.00 an hour.  (*Id.*)  And, "from

4

the month of May 2019" until his termination on October 11, 2019, Plaintiff was allegedly paid at a rate of $18.00 an hour.  (*Id.*)  With regard to his final rate of pay, Plaintiff asserts in his Declaration that, after he complained about a lack of overtime payment in May 2019, his manager, Davis, stated to him:  "[O]k, I will give you a raise to $18 an hour but keep your mouth shut and stop bothering me and don't tell the other supers."  (Hernandez Decl. ¶ 7.)   Plaintiff additionally maintains that, throughout his employment, he was never paid a "spread of hours premium for days lasting longer than [10] hours."  (Compl. ¶ 37; *see* Hernandez Decl. ¶ 14.)

Lastly, Plaintiff states that, in or around the fall of 2019, he "attempted to help organize a union" to address "Defendants' illegal policies of not compensating workers for all the hours worked."  (*Id.* ¶ 38; *see* Hernandez Decl. ¶ 8.)  More particularly, at that time, Plaintiff, along with "[m]any" other employees, allegedly "signed a petition to unionize, which was given to . . . a potential Union Rep[resentative]."  (Hernandez Decl. ¶ 8.)  Plaintiff states in his Declaration that, soon after he signed that petition, he and three of his co-workers, "Carlos, Glenn, [and] Eduardo," were "fired for complaining too much about the hours."  (*Id.*)

### B.   Procedural History

Plaintiff filed the Complaint initiating the instant action on April 17, 2020, asserting claims under both the FLSA and the NYLL.  (*See generally* Compl.)  Defendants filed their Answer to the Complaint on August 21, 2020.  (*See* Answer, dated Aug. 21, 2020 (Dkt. 28).)

### 1.   Plaintiff's Motion for Conditional Certification

On October 22, 2020, Plaintiff filed a motion for conditional certification of an FLSA collective and facilitation of notice pursuant to 29 U.S.C. § 216(b).  (*See* Motion to Certify Class, dated Oct. 22, 2020 (Dkt. 34).)  By this motion, Plaintiff seeks to proceed in this case on behalf of himself and all similarly situated persons employed by Defendants at any time in the six years

prior to the filing of the instant lawsuit.  (*See* Memorandum of Law in Support of Plaintiff's Motion For Conditional Collective Certification, dated Oct. 22, 2020 ("Pl. Mem.") (Dkt. 35) at 1, 8.)  In support of his motion, Plaintiff submitted his own Declaration (*see* Hernandez Decl.), a memorandum of law (Pl. Mem.), which was accompanied by Plaintiff's proposed notice to potential collective action members and a proposed consent-to-join form (*see* Dkt. 35-1), and a Declaration from his counsel (*see* Declaration of C.K. Lee, Esq., dated Oct. 22, 2020 ("Lee Decl.") (Dkt. 36)).  On November 23, 2020, Defendants filed a memorandum of law in opposition to the motion.  (*See* Memorandum of Law in Opposition to Plaintiff's Motion for Conditional Collective Certification and For Court Facilitation of Notice Pursuant to 29 U.S.C. § 216(b), dated Nov. 23, 2020 ("Defs. Mem.") (Dkt. 40).)  On December 2, 2020, Plaintiff filed a reply memorandum.  (*See* Reply Memorandum of Law in Support of Plaintiff's Motion for Conditional Collective Certification, dated Dec. 2, 2020 ("Pl. Reply") (Dkt. 42).)

### 2. Plaintiff's Motion to Compel

About a month after he filed the conditional certification motion, Plaintiff filed a second motion, by letter, seeking to compel Defendants to produce Rule 23 class discovery.  (*See* Letter to the Court from C.K. Lee, Esq., dated Nov. 30, 2020 ("11/30/20 Lee Ltr.") (Dkt. 41).)  Plaintiff specifically argued that he was entitled to the disclosure of:

> (1)  contact information, as well as wage-related information and documents, "for putative Rule 23 Class and Expanded FLSA Collective Members across Defendants['] locations";
>
> (2)  "e-discovery relating to the wage-and-hour and retaliation issues in the case"; and
>
> (3)  "documents relating to Plaintiff and potential collective plaintiffs' attempts to unionize."

(*Id.*, at 2-3.)

6

On December 3, 2020, Defendants opposed Plaintiff's motion to compel, arguing,

*inter alia*, that (1) his requests for Rule 23 class discovery and documents relating to

unionization efforts were premature, given that he had moved for conditional certification before

Defendants' discovery responses were due; and (2) his request for e-discovery was both

overbroad and burdensome.  (*See* Letter to the Court from Ian-Paul A. Poulos, Esq., dated

Dec. 3, 2020 ("12/3/20 Poulos Ltr.") (Dkt. 43).)

### 3.      The Parties' Joint Request For an Extension of the Discovery Deadlines

On March 24, 2021, while the above-described motions were pending before this Court,

counsel for Plaintiff, writing on behalf of all parties, filed a letter requesting a five-month

extension of the discovery deadlines in this case.  (*See* Letter from C.K. Lee, Esq., to the Court,

dated Mar. 24, 2021 ("3/24/21 Lee Ltr.") (Dkt. 46) (seeking to extend Plaintiff's deadline to file

a Rule 23 motion for class certification from March 30, 2021 to August 30, 2021, and the fact

discovery deadline from April 1, 2021 to September 1, 2021).)  In that same letter, counsel also

noted that the parties were at an impasse regarding the "scope" of depositions to be conducted,

meaning that they disagreed as to whether deposition questions could be asked relating to

Plaintiff's "class claims, collective claims, and single enterprise allegations."  (*Id.*, at 1-2.)

## DISCUSSION

## I.      PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION

### A.      Applicable FLSA Legal Standards

"The FLSA was designed 'to correct and as rapidly as practicable to eliminate' the

practice of employers failing to pay its employees proper wages."  *Armenta v. Dirty Bird Grp.,*

*LLC*, No. 13cv4603 (WHP), 2014 WL 3344287, at *1 (S.D.N.Y. June 27, 2014) (quoting

29 U.S.C. § 202(b)).  "Under the FLSA, Congress prescribes a minimum wage to foster the

'minimum standard of living necessary for health, efficiency, and general well-being of workers,'" and employers may be found liable if they fail to pay their employees in accordance with the federal minimum wage.  *Id.* (quoting 29 U.S.C. § 202(a)).  The FLSA also "requires employers to pay overtime for employment 'in excess of [40 hours per week] . . . at a rate not less than one and one-half times the regular rate at which [the employee] is employed.'" *Benitez v. Demco of Riverdale, LLC*, No. 14cv7074 (CM), 2015 WL 3780019, at *2 (S.D.N.Y. June 15, 2015) (alterations in original) (quoting 29 U.S.C. § 207(a)(1)).

## 1.   Section 216(b)

Section 216(b) of the FLSA allows employees to "recover unpaid minimum wages and/or overtime compensation from an employer who violates the [FLSA's] provisions, and permits such an action to be brought as a collective action."  *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 384 (E.D.N.Y. 2010).  Pursuant to Section 216(b):

> An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b); *see also Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 320 (S.D.N.Y. 2007) (noting that employees can maintain a collective action against an employer where the employees are (1) "similarly situated" and (2) give their consent to become a party in writing).

There are three "essential features" of an FLSA collective action under Section 216(b). *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007).

> First, in order to participate in a collective action, an employee must "opt-in," meaning the employee must consent in writing to join the suit and that consent must be filed with the court.  Second, the statute of limitations runs on each employee's claim until his

> individual Consent Form is filed with the court.  Third, to better
> serve the FLSA's "broad remedial purpose," courts may order
> notice to other potential similarly situated employees to inform
> them of the opportunity to opt-in the case.

*Id.* (*quoting Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 173 (1989)).  Thus, "[a]lthough

Section 216(b) does not explicitly address court-authorized notice, 'it is 'well settled' that district

courts have the power to authorize an FLSA plaintiff to send such notice to other potential

plaintiffs.'"  *Grant v. Warner Music Grp. Corp.*, No. 13cv4449 (PGG), 2014 WL 1918602, at *2

(S.D.N.Y. May 13, 2014) (quoting *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d

101, 104 (S.D.N.Y. 2003)) (additional citations omitted).

## 2.   Motions for Conditional Certification of a Collective

 "Procedurally," the Second Circuit has "endorsed a two-step process for certifying FLSA

collective actions based on the 'similarly situated' requirement."  *Scott v. Chipotle Mexican*

*Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. Apr. 1, 2020).

> At step one, the district court permits a notice to be sent to
> potential opt-in plaintiffs if the named plaintiffs make a modest
> factual showing that they and others together were victims of a
> common policy or plan that violated the law.  At step two, with the
> benefit of additional factual development, the district court
> determines whether the collective action may go forward by
> determining whether the opt-in plaintiffs are in fact similarly
> situated to the named plaintiffs.

*Id*. (internal quotation marks and citation omitted).

On an initial, pre-discovery motion for conditional certification of a collective – *i.e.*, a

"step one" motion, such as the one currently before this Court – courts look to the pleadings, and

to any statements made by plaintiffs in submitted affidavits or declarations, to determine whether

the named plaintiffs have made the requisite initial showing that the proposed opt-in plaintiffs

are "similarly situated" to them.  *See Fasanelli*, 516 F. Supp. 2d at 321; *see also In re Penthouse*

*Exec. Club Comp. Litig.*, No. 10cv01145 (NRB), 2010 WL 4340255, at *3 (S.D.N.Y. Oct. 27, 2010).  At this initial stage, "the [c]ourt does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."  *Summa*, 715 F. Supp. 2d at 385 (internal quotation marks and citation omitted); *see also Lynch,* 491 F. Supp. 2d at 368 ("Indeed, a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." (citations omitted)); *Bijoux v. Amerigroup N.Y.*, *LLC*, No. 14cv3891 (RJD) (VVP), 2015 WL 4505835, at *3 (E.D.N.Y. July 23, 2015), *report and recommendation adopted*, 2015 WL 5444944 (E.D.N.Y. Sept. 15, 2015) (At this stage "the court's task is only to conclude whether there *may be* other similarly situated workers, and [the court] need not evaluate the underlying merits of a plaintiff's claims" (internal quotation marks and citations omitted; emphasis in original)).  Additionally, as "the initial [collective] certification determination [is] made . . . on preliminary documents such as pleadings and affidavits," the determination is "necessarily [based on] unproven allegations." *Fasanelli*, 516 F. Supp. 2d at 321-22 (rejecting defendant's arguments that declarations provided by plaintiff should not be relied upon because they contained "inadmissible hearsay, speculation, personal beliefs and conclusions," and granting conditional certification).

Further, as noted above, the burden imposed on plaintiffs at the first, conditional certification stage is "modest," *Scott*, 954 F.3d at 515, and, indeed, some courts have characterized it as "light," *see Sanchez v. Gansevoort Mgmt. Grp.*, No. 12cv75 (KBF), 2013 WL 208909, at *1 (S.D.N.Y. Jan. 10, 2013), or even as "minimal," *see Amador v. Morgan Stanley & Co.*, No. 11cv4326 (RJS), 2013 WL 494020, at *4 (S.D.N.Y. Feb. 7, 2013) (citation omitted). The burden at this stage is "low" because "the purpose of this first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist." *Myers v. Hertz Corp.*, 624 F.3d 537, 555

(2d Cir. 2010) (citations omitted; emphasis in original).  It is not until the second stage, upon a "full review of the factual record developed during discovery," that the court determines "whether opt-in plaintiffs are *actually* 'similarly situated.'"  *Amador*, 2013 WL 494020, at *4 (internal quotation marks and citation omitted; emphasis in original).  At bottom, while conditional certification is not automatic, and while a plaintiff's showing in support of certification cannot be entirely conclusory, *see, e.g.*, *Morales v. Plantworks, Inc.*, No. 05cv2349 (DC), 2006 WL 278154, at *2-3 (S.D.N.Y. Feb. 2, 2006) ("[I]n making this showing, '[c]onclusory allegations are not enough.'" (alteration in original; citation omitted)), courts have recognized the leniency of the standard at this first stage, and thus have "typically grant[ed] conditional certification," *Amador*, 2013 WL 494020, at *3 (alteration omitted) (quoting *Malloy v. Richard Fleischman & Assocs. Inc.,* No. 09cv332 (CM), 2009 WL 1585979, at *2 (S.D.N.Y. June 3, 2009)).

If, based on the plaintiffs' pleadings and submitted affidavits or declarations, the court is satisfied that at least a modest showing has been made that the opt-in plaintiffs are "similarly situated" to the named plaintiffs, then it will authorize that notice be sent to potential opt-in plaintiffs.  *Fasanelli*, 516 F. Supp. 2d at 321.  After discovery is complete, the court will then evaluate the full record before it to determine whether the opt-in plaintiffs are, in fact, "similarly situated."  *Id.*  "If they are not, the [collective] can be decertified at that time and the claims of dissimilar 'opt-in' plaintiffs dismissed without prejudice."  *Id.*

"Neither the FLSA nor its implementing regulations define 'similarly situated.'"  *Summa*, 715 F. Supp. 2d at 385 (citing *Hoffmann v. Sbarro, Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  In *Scott*, however, the Second Circuit considered how the term should be viewed, and concluded that "to be 'similarly situated' means that named plaintiffs and opt-in

11

plaintiffs are alike with regard to some material aspect of their litigation." *Scott*, 954 F.3d at 516 (citation omitted). "That is," the Circuit explained, "party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id*. For this reason, as long as "named plaintiffs and party plaintiffs share legal or factual similarities material to the disposition of their claims, dissimilarities in other respects should not defeat collective treatment." *Id*. (internal quotation marks and citation omitted). Thus, "[i]f the opt-in plaintiffs are similar to the named plaintiffs in some respects material to the disposition of their claims, collective treatment may be to that extent appropriate, as it may to that extent facilitate the collective litigation of the party plaintiffs' claims." *Id*.

The Second Circuit's analysis in *Scott* particularly focused on the question of how district courts should analyze an evidentiary record, when considering whether a conditionally certified collective should be decertified, at the second step of the certification process. *See id*. at 515-20. As for the initial procedural step, the court provided less guidance, but, logically, there should certainly be no more stringent test for "similarity" at the first, more lenient, stage of the certification process than at the second. Thus, this Court understands that the requirement that the named plaintiffs make an initial "modest factual showing that they and others together were victims of a common policy or plan that violated the law," *id*. at 515, means that they must simply show, through pleadings, affidavits, and/or declarations that are not entirely conclusory, that they and the potential opt-in plaintiffs share at least some similar "issue of [material] law or fact," with respect to the defendant's alleged unlawful wage policy or plan, s*ee id*. at 516.

3.    **Notice**

Once a court determines that a named plaintiff has met his or her burden for initial

certification of a collective, the court may grant court-authorized notice informing potential

additional plaintiffs of their opportunity to opt into the lawsuit.  *Lynch,* 491 F. Supp. 2d at 367.

The Supreme Court has held that:

> court-supervised notice is the preferred method for managing the
> notification process for several reasons:  it avoids 'multiplicity of
> duplicative suits;' it allows the court to set deadlines to advance
> the disposition of an action; it furthers the 'wisdom and necessity
> for early judicial intervention' in multi-party actions; and it
> protects plaintiffs' claims from expiring under the statute of
> limitations.

*Id.* (quoting *Hoffmann-La Roche*, 493 U.S. at 171-72).

"[T]he form and content of the notice . . . is to be approved by the [c]ourt prior to

mailing," in order to prevent "after-the-fact disputes between counsel" regarding the form and

manner of the notice and the opt-in plaintiffs' consent form.  *Krueger v. New York Tel. Co.*,

No. 93cv0178 (LMM), 1993 WL 276058, at *3 (S.D.N.Y. July 21, 1993) (citing *Hoffmann-La

Roche*, 493 U.S. at 170).  "[N]either the FLSA nor the courts 'have specifically outlined what

form court-authorized notice should take,'" *Amador*, 2013 WL 494020, at *9 (quoting *Fasanelli*,

516 F. Supp. 2d at 323), and the district court has discretion to determine the notice's appropriate

contents, *see Fasanelli*, 516 F. Supp. 2d at 323 (citing *Hoffmann-La Roche*, 493 U.S. at 170 and

stating that "[t]he Supreme Court has abstained from reviewing the contents of a proposed notice

under § 216(b), noting that such 'details' should be left to the broad discretion of the trial

court").  When exercising discretion, courts in this District have considered the overarching

policies of the notice provisions of Section 216(b), such as achieving judicial efficiency and

lowering individual costs for plaintiffs.  *Fasanelli*, 516 F. Supp. 2d at 323.  "[T]hese benefits

'depend on employees receiving accurate and timely notice concerning the pendency of the

collective action, so that they can make informed decisions about whether to participate.'" *Id.*
(quoting *Hoffmann-La Roche*, 493 U.S. at 170).

### 4.    <u>Statute of Limitations</u>

"The statute of limitations under the FLSA is ordinarily two years, but it may be extended
to three years if the claim arises from a 'willful' violation." *Yu G. Ke v. Saigon Grill, Inc.*,
595 F. Supp. 2d 240, 258 (S.D.N.Y. 2008) (citing 29 U.S.C. § 255(a)).  To satisfy the willfulness
requirement, a plaintiff must demonstrate that the employer either acted knowingly or "'showed
reckless disregard for the matter of whether its conduct was prohibited by the statute.'"  *Id.*
(quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

As the statute of limitations does not toll for opt-in plaintiffs until they consent to appear,
*see Lynch*, 491 F. Supp. 2d at 371, courts will, following a finding that the named plaintiff is
similarly situated to the potential collective members, "routinely approve court-authorized notice
in order to ensure that the rights of potential claimants do not expire during the discovery
process." *Grant*, 2014 WL 1918602, at *2; *see also Khamsiri v. George & Frank's Japanese
Noodle Rest. Inc., No.* 12cv265 (PAE), 2012 WL 1981507, at *2 (S.D.N.Y. June 1, 2012)
("[C]ourt-authorized notice is appropriate[ ] to prevent erosion of claims due to the running
statute of limitations . . . .").  The FLSA provides that a collective action is considered
commenced for each individual plaintiff:  "(a) on the date the complaint is filed, if [the
individual plaintiff] is specifically named as a party plaintiff in the complaint . . . or (b) . . . on
the subsequent date on which such written consent [to become a party plaintiff] is filed in the
court . . . ."  29 U.S.C. § 256.

### B.   Sufficiency of Plaintiff's Motion for Conditional Certification

Plaintiff seeks conditional certification of an FLSA collective consisting of all current and former superintendents, porters, handymen, and maintenance workers employed at any of Defendants' buildings.  (*See generally* Pl. Mem., at 7-8.)  Although Defendants have raised a number of arguments as to why Plaintiff's motion should be denied, each of which is addressed in turn, this Court finds, for the reasons discussed below, that conditional certification – albeit of a more limited collective than the one sought by Plaintiff – is appropriate here.

### 1.   Plaintiff's Allegations Are Not Merely Conclusory.

Defendants first argue that conditional certification should be denied because Plaintiff has relied solely on conclusory allegations, based on his "observations" and "conversations" with co-workers – an approach that, Defendants contend, has been rejected in other cases in this Circuit.  (*See* Defs. Mem., at 9-11.)

As noted above, in support of his motion, Plaintiff has submitted a Declaration restating much of the information alleged in the Complaint.  (*See* Hernandez Decl.)  In his Declaration, Plaintiff has affirmed that "[b]ased on [his] work experience and [his] personal observations and conversations with co-workers," he knew that "Defendants' non-management employees" were not compensated for all hours worked and not paid overtime.  (*Id.* ¶ 2.)  He then specifically asserts, consistent with the allegations in the Complaint, that he and other superintendents were "on call all day and would have hours of afterhours work to perform," but were expressly instructed by their manager, Davis, to not "mark [their] real hours on the timesheets" and instead only to document that they worked "40 hours per week."  (*Id.* ¶ 6.)  Plaintiff also clarifies in his Declaration that he spoke with at least four other superintendents, each of whom he identifies by first name, who confirmed that they too were subjected to the same unlawful pay practices

15

alleged in the Complaint.  (*See id.* ¶¶ 2-3, 6.)  Plaintiff further explains that he spoke with these

four superintendents at weekly meetings (where their manager was present) and that three of

those individuals were assigned to buildings in Manhattan where Plaintiff also worked.  (*See id.*

¶ 2 (stating that Carlos worked at 6 Morningside Street;[2] Glenn worked at 375 West 127th Street;

Domingo worked at 310 West 112nd Street; and Eduardo worked at 243 116th Street); *id.* ¶ 4

(identifying the first three addresses as locations where Plaintiff had been assigned).)

       In arguing that Plaintiff's allegations fail to meet the "modest" burden of showing that he

and members of the proposed collective have been victims of a common policy or plan that

violated the law, Defendants rely heavily on two cases where the representations of a single

plaintiff were found to be insufficient to support the conditional certification of a collective that

included other workers holding the same position as that plaintiff.  (*See* Defs. Mem., at 1-10

(citing *Mata v. Foodbridge LLC*, No. 14cv8754 (ER), 2015 WL 3457293 (S.D.N.Y. June 1,

2015); *Sanchez v. JMP Ventures, LLC*, No. 13cv7264 (KBF), 2014 WL 465542 (S.D.N.Y.

Jan. 27, 2014).)  In contrast with Defendants' cited authority, however, this Court is not

persuaded that Plaintiff's allegations are so bare and conclusory as to fail entirely to meet his

"modest" burden at the conditional-certification stage.

       While Plaintiff has submitted only his own Declaration, which identifies only four other

employees (all superintendents assigned to buildings in Manhattan) who have shared information

with him about Defendants' employment practices, the accusations leveled by him in that

Declaration are more specific and better supported than the allegations made in the cases cited by

Defendants.  Unlike in *Mata* and *Sanchez*, this is not a case where the plaintiff has failed to

---

[2] "6 Morningside Street" appears to have been written in error, as the only potentially applicable address in Manhattan is "6 Morningside Avenue," which Plaintiff later lists in his Declaration.  (*See* Hernandez Decl. ¶ 4.)

provide any details at all regarding any observations of, or conversations, with co-workers that could support collective certification.  *See Mata*, 2015 WL 3457293, at *4 (citing *Sanchez*, 2014 WL 465542, at *2).  Rather, Plaintiff has declared, under penalty of perjury, that, during his 11-month employment, he, and four other, specifically named superintendents regularly met at Defendants' buildings, and, during those meetings (either amongst themselves or with management), they discussed Defendants' weekly failure to compensate them for overtime wages for all hours worked.  Indeed, in contrast with the generalized pleadings in both *Mata* and *Sanchez*, Plaintiff, in this case, has quoted directly from alleged conversations that he and his co-workers had with Defendants' management, stating that management expressly instructed him and the other superintendents to "fill out [their] timesheets to reflect 40 hours per week only," even though they were also required to perform a variety of tasks that "occurr[ed] after [their] shifts were done."  (Hernandez Decl. ¶ 3; *compare with Sanchez*, 2014 WL 465542, at *2 (where plaintiff did not "provide *any* detail as to a *single* such observation or conversation," the court was unable "to determine the appropriate scope of the proposed class" (emphasis in original)).)

Although Plaintiff has not offers direct quotations from the other identified superintendents, or pinpoint the specific calendar days on which he and they spoke with management, those omissions do not defeat Plaintiff's motion for conditional certification.  Plaintiff's burden at this stage is "modest," and while Defendants may be able to present evidence later in this litigation (should they move for decertification) showing that Plaintiff's experience was not shared with others in the way he now suggests, he has offered adequate evidence, at this point, that Defendants' alleged instructions to omit time from his timesheets (so that he would not be paid overtime) were not limited to him.  This is sufficient to warrant

conditional certification.  *See, e.g., Zhang v. Hiro Sushi at Ollie's Inc.*, No. 17cv7066 (DF), 2019

WL 699179, at *8-9 (S.D.N.Y. Feb. 5, 2019) (granting motion for conditional certification where

plaintiff, a delivery worker, described conversations with other current and former delivery

workers, and attested that, based on those conversations, the other workers were paid at the same

rate as he was, which was below the minimum wage); *see also Ramos v. Platt,* No. 13cv8957

(GHW), 2014 WL 3639194, at *2 (S.D.N.Y. July 23, 2014) (conditional certification may be

granted on the basis of the complaint and the plaintiff's personal affidavit).

### 2.   Plaintiff Has Adequately Alleged a Common Unlawful Policy.

Next, Defendants argue that Plaintiff has failed to set forth a policy or practice of

Defendants that is in violation of the FLSA.  (*See* Defs. Mem., at 12-13.)  This contention also

lacks merit.

At this stage, Plaintiff need only provide some evidence that he and others "together were

victims of a common policy or plan that violated the law."  *Myers*, 624 F.3d at 555 (internal

quotation marks omitted).  As discussed above, the allegations in the Complaint and the

Declaration set forth that Plaintiff and the potential opt-in plaintiffs, despite working for

additional amounts of time after their scheduled shifts and on Saturdays, were compensated

solely on the hours set forth in their timesheets, which were purposefully limited to 40 hours per

week.  Plaintiff has thus alleged that Defendants had a policy of not compensating employees for

actual time worked, but only for time reflected in timesheets that were known to have been

inaccurate.  These types of allegations are sufficient to meet Plaintiff's burden to show that he

and others were victims of a common policy or plan in violation of the FLSA.  *See, e.g.,*

*Mendoza v. Ashiya Sushi 5, Inc.*, No. 12cv8629 (KPF), 2013 WL 5211839, at *4 (S.D.N.Y. Sept.

16, 2013) (holding that the plaintiff made the "modest factual showing" that he and other

potential plaintiffs were "victims" of defendant's "common policy . . . of failing to comply with overtime requirements" where the plaintiff alleged that he "'generally' received a flat weekly salary without regard to the number of hours" worked and alleged that he spoke with other employees who were paid on the same flat scale without receiving overtime).  Accordingly, conditional certification cannot be denied on this basis.[3]

### 3.   Plaintiff Has Sufficiently Shown That He Is "Similarly Situated" to at Least Certain Co-Workers.

Defendants go on to argue that Plaintiff's motion for conditional certification must be denied on the grounds that Plaintiff has not established that he is "similarly situated" to other employees at Defendants' buildings.  (*See* Defs. Mem., at 11-12.)  As set out above, the relevant inquiry for this Court is not whether plaintiffs in the potential collective are identically situated, or that they possess the same attributes with respect to their job, but rather whether they share common, material questions of fact or law with respect to their claims.  *Scott,* 954 F.3d at 516. In light of this standard, this Court concludes that Plaintiff has met his burden of making a "modest factual showing" that, during the proposed period of the proposed collective, those who

---

[3]  To the extent Defendants suggest that Plaintiff has failed to demonstrate a common scheme or plan of alleged wage violations because he, as a superintendent, was not entitled to spread-of-hours pay (*see* Defs. Mem., at 13-14), their argument is unpersuasive because, while it is true that New York's Minimum Wage Order for the Building Service Industry exempts certain residential janitors and superintendents from overtime under state law, it does not "address obligations under federal law, nor can it." *Taveras v. D&J Real Estate Management II, LLC*, 324 F.R.D. 39, 41 (S.D.N.Y. Mar. 23, 2018) (holding that an "employer must comply with both state and federal wage laws, and where, as here, the FLSA provides greater protection than state law in terms of minimum wages and payment of overtime, an employer must pay the greater amounts due under federal law.").  Equally unpersuasive, at this juncture, is any challenge that Defendants may be attempting to raise regarding the truthfulness of Plaintiff's assertion that he was not paid for overtime work (*see* Defs. Mem., at 15), as this type of factual dispute is not appropriately resolved at this stage of the case.  *See Liping Dai*, 2018 WL 4360772, at *5 ("[A]t this initial procedural stage, the [c]ourt does not 'resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.'" (quoting *Shillingford v. Astra Home Care, Inc*., 293 F. Supp. 3d 401, 407 (S.D.N.Y. 2018))).

worked (or continue to work) as superintendents at Defendants' buildings in Manhattan are "similarly situated" with respect to the common types of FLSA violations they claim.  *Id.*[4]

> **a.    Plaintiff Has Sufficiently Demonstrated That**
> **the Collective Should Include Superintendents**
> **<u>Who Worked at Defendants' Buildings in Manhattan.</u>**

In both the Complaint and his Declaration, Plaintiff asserts that he worked as a superintendent at several of Defendants' buildings in Manhattan.  (Compl. ¶ 30; Hernandez Decl. ¶ 4.)  He asserts that, during his employment, he was required "always [to] be on call and . . . to shovel snow, sweep the sidewalks, respond to tenant calls, answer doors for police and firemen, *etc.,* and all of this would occur after [his] shifts were done."  (Hernandez Decl. ¶ 3.)  He then alleges that other superintendents at Defendants' buildings in Manhattan – namely, Carlos, Glenn, Domingo, and Eduardo – performed these same tasks and, like Plaintiff, regularly worked in excess of 40 hours per week, even though they were not compensated for their overtime work. (*Id.*)  Plaintiff also asserts that these same four co-workers, along with himself, were informed by their manager (Davis) that overtime pay was not offered (*id.* ¶ 6) and, separately, that they were not permitted to document any extra hours, beyond a 40-hour week total, in their timesheets (*see id.* ¶¶ 3, 6).

From these allegations, this Court can "fairly infer" that Plaintiff and others who, like him, served as superintendents at Defendants' buildings in Manhattan, were subjected to the same alleged timesheet scheme and were denied overtime wages mandated by the FLSA.  *See*

---

[4] Upon its review of the Complaint and Plaintiff's Declaration, this Court also rejects Defendants' assertion that conditional certification should be denied on the basis that Plaintiff's individual retaliation claim is either too "intertwined" with his underpayment claims or predominates this suit; even accounting for the differences in claims, it appears, at this stage, that common questions will likely predominate over individual ones.  *See, e.g., Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 353 (S.D.N.Y. 2017) (finding that class issues predominated over individual issues).

*Liping Dai v. Lychee House, Inc.*, No. 17cv6197 (DF), 2018 WL 4360772, at *7 (S.D.N.Y. Aug. 29, 2018) (where two plaintiffs who were both food "preparers" or "cutters" alleged common wage violations, court could infer that other food preparers or cutters were subject to the same violations); *Lianhua Weng v. Kung Fu Little Steamed Buns Ramen Inc.*, No. 17cv273 (LAP), 2018 WL 1737726, at *3 (S.D.N.Y. Mar. 26, 2018) (at initial stage, finding it permissible to infer from statements of two named plaintiffs – both of whom worked as deliverymen for defendants, although at different locations – "'that other deliverymen worked similar shifts for comparable pay, thereby suffering the same violations of the FLSA'" (quoting *She Jian Guo v. Tommy's Sushi Inc.*, No. 14cv3946 (PAE), 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014)).

Defendants, however, argue that, even if this Court were to certify a collective class of superintendents, the class should be further limited to *only* those superintendents who worked at the seven Manhattan buildings to which Plaintiff was primarily assigned. (*See* Defs. Mem., at 12 (arguing that, because Plaintiff "could only have personal knowledge about his experiences at the seven buildings to which he was assigned," the collective should be geographically limited to those buildings).) Conversely, it appears that Plaintiff seeks a much broader collective that would include all superintendents working in *any* of Defendants' buildings throughout the five boroughs of New York City. (*See* Pl. Mem., at 2-3, 5.) Neither proposal would be appropriate here.

To start, although some courts have denied conditional certification where the plaintiff sought to certify a class comprising of employees working at locations other than where the plaintiff worked, and of which the plaintiff had no personal knowledge, *see, e.g., Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 458 (E.D.N.Y. 2014) (denying conditional certification of a statewide class because the plaintiff's "lack of knowledge of any pay violations at other New

York stores[ ] do[es] not warrant a finding that [sales associates] at all New York stores are similarly situated" to the plaintiff"), others have held that a lack of personal knowledge is not fatal where the plaintiff has offered testimony indicating a widespread policy or pattern of management, *see, e.g., Guo Qing Wang v. H.B. Rest. Grp., Inc*., No. 14cv813 (CM), 2014 WL 5055813, at *4 (S.D.N.Y. Oct. 7, 2014) (certifying a collective action based on the plaintiff's "observations and . . . conversations with his co[-]workers"); *Juarez v. 449 Rest., Inc*., 29 F. Supp. 3d 363, 371 (S.D.N.Y. 2014) (granting conditional certification of a collective including employees at other locations, where there was evidence that the "three [locations] were run as an integrated enterprise," which could "reasonably imply that they had uniform wage-and-hour policies").

In this case, Plaintiff's allegations, although a bit thin, support the inference of an unlawful management policy that extended beyond only the seven buildings to which he was formally assigned.  Plaintiff alleges that, in his role as a superintendent, he was not only assigned to maintain seven buildings, but to service an additional 12 (all in Manhattan), and that, throughout his employment, he was subjected to the same unlawful time-sheet policy described above.  (Hernandez Decl. ¶¶ 2, 4.)  Plaintiff also states that he worked with and talked to other superintendents (all of whom worked at various buildings maintained by Defendants in Manhattan), who confirmed that the same timesheet-related policy had been applied to them. (*Id.* ¶¶ 2-3, 6.)  Defendants, in opposition, do not suggest that Plaintiff was subjected to a different compensation scheme than other Manhattan-based superintendents, or even that they had different supervisors.  (*See generally* Defs. Mem.)  Rather, it can be inferred from Plaintiff's Declaration that he, along with his co-superintendents Carlos, Glenn, Domingo, and Eduardo, reported, at least at some point in time, to the manager Davis (with whom they allegedly attended

weekly meetings), and that, during the period of these meetings, Davis responded to their complaints about a lack of overtime pay by stating: "[T]hat's how it is here.  If you like it, great, if not, you know what to do."  (Hernandez Decl. ¶ 6.)  Based on this, this Court finds that Plaintiff has sufficiently demonstrated that the collective should include superintendents who have worked, or are working, at Defendants' buildings in Manhattan.

At the same time, because there is absolutely *no* indication in the record that superintendents working for Defendants in *any* of the other boroughs of New York City were subjected to the same allegedly unlawful payment policy or plan (*see generally* Compl.; Hernandez Decl.; Answer), this Court finds it appropriate to narrow the scope of Plaintiff's proposed collective to only those superintendents working at Defendants' Manhattan buildings. *See, e.g., Contrera v. Langer*, 278 F. Supp. 3d 702, 719 (S.D.N.Y. 2017) (limiting scope of the proposed collective to superintendents who worked at defendants' buildings in Upper Manhattan and the Bronx); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 667 (S.D.N.Y. 2013) (conditionally certifying class of employees at Hess gas stations in Queens and the Bronx, but not state- or nation-wide, because "the allegations only reach[ed] as far as the management of the territories encompassing the Queens and Bronx stations" and "[n]othing in the record suggest[ed] that similar failures" extended to other territories).

This Court reiterates that Plaintiff will bear the burden at the decertification stage (should Defendants move for decertification) of setting forth evidence that all of the opt-in plaintiffs suffered the same overtime violations alleged by Plaintiff.  At this early stage, however, this Court finds that the factual and legal issues alleged to be common with respect to the way in which the named Plaintiff was paid – in his position as a superintendent – are material to the question of whether Plaintiff is entitled to FLSA damages, and, thus, Plaintiff has met his burden

of showing that superintendents at Defendants' buildings in Manhattan are similarly situated for purposes of conditional collective certification.

>    **b.**    **Plaintiff Has Not Sufficiently Demonstrated That the**
>              **Collective Should Include Workers in Other Job Positions.**

Plaintiff seeks to include in the proposed collective not just superintendents, but also workers who held certain other positions at Defendants' buildings.  (*See* Pl. Mem., at 1; Pl. Reply, at 9.)  In response, Defendants argue that, even if Plaintiff has made the requisite factual showing to certify a collective of superintendents, he has not demonstrated a basis for a collective broader than that.  (*See* Def. Mem., at 10-11.)

To be entitled to conditional certification, Plaintiff must show that there is at least some common question of law or fact that justifies including the identified job positions in the collective.  *Scott*, 954 F.3d at 516.  The Second Circuit's requirement that such common questions be "material" suggests that Plaintiff must do more than show that workers were employed by the same employer.  *Pequero v. Montafon, LLC*, No. 18cv12187 (DF), 2020 WL 4016756, at *9 (S.D.N.Y. July 15, 2020).  Even accepting that the burden Plaintiff must meet is minimal, this Court agrees with Defendants that, here, Plaintiff has not alleged or proffered any facts to justify adding to the collective individuals who worked (or currently work) for Defendants in positions other than that of superintendent.

As an initial matter, it is noteworthy that the Complaint refers to Plaintiff only as a superintendent, while his Declaration describes him as a "super/porter/handyman."  (Hernandez Decl. ¶ 1.)  Faced with these different job descriptions, this Court accepts the latter (and broader) characterization of Plaintiff's employment for purposes of this motion, and will thus assume, at this juncture, that he performed at least some duties as a porter and handyman.  What this Court *cannot* assume, however, is that other workers, holding the position of porter or handyman (or

maintenance worker, which is another job title Plaintiff seeks to include in the collective (*see* Pl.

Mem., at 1)) should be considered similarly situated to Plaintiff with regard to any alleged

common policy or plan of Defendants, in violation of the FLSA.

Although Plaintiff makes a conclusory assertion that he "observed that other employees,

including porters, handymen, . . . and maintenance persons, did work that was the same or

similar to the work [he] did and were compensated in a similar manner to [him]" (Hernandez

Decl. ¶ 1), Plaintiff nowhere identifies *any* other employee, working in a porter, handyman, or

maintenance position, as to whose hours and wages he purportedly has personal knowledge (*see*

*generally id*.). Rather, he only specifically names four "supers" who, he states, complained to

him about Defendants' timesheet policy and failure to pay overtime wages. (*Id.* ¶¶ 2-3, 6.) This

Court has no basis to conclude that those same four "supers" were also employed as porters,

handymen, or maintenance workers. Moreover, this Court finds that Plaintiff's general statement

that he observed employees in such positions to be "compensated in a similar manner" to him is

too vague to constitute a showing that such workers were subjected to a particular, unlawful pay

policy. *See Reyes Cruz v. 70-30 Austin St. Bakery Inc.*, No. 18cv7408 (PAE) (HBP), 2019 WL

1929910, at *4-5 (S.D.N.Y. May 1, 2019) (holding that, plaintiff's "broad assertions" that he

observed his co-workers suffer from defendants' pay practices, were "precisely the vague,

conclusory, and unsupported assertions that are an insufficient basis for conditional certification"

(internal quotation marks and citation omitted)); *see also She Jian Guo*, 2014 WL 5314822, at *3

(denying conditional certification of a class of all hourly paid, non-managerial employees based

on "unsupported assertions" regarding discussions and comparisons among co-workers).

Essentially, Plaintiff has offered *no* information (other than for himself) regarding the

hours that were worked by porters, handymen, or maintenance workers, or how they were paid,

during any specified period of time.  Nor is it inherently obvious that a person working only as a porter, handyman, or maintenance worker would need to be "on call" around the clock (even if this were true for building superintendents), and thus Defendants' overtime policies regarding such other employees may well have been different than the policies they applied to superintendents.  In short, absent more specific information, this Court cannot conclude, even on a preliminary basis, that Defendants' employees – other than superintendents – were subjected by Defendants to particular, unlawful pay policies, or that they have claims that share any common questions of fact or law with Plaintiff's claims.  *See Qiang Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89, 95-96 (S.D.N.Y. 2020) (holding that plaintiff, a delivery person, failed to show that he was similarly situated to waiters at defendant's restaurant where he did not name any waiters, did not identify any time or place where his conversations with waiters took place, and did not indicate the number of hours that waiters worked or how waiters were paid).

As Plaintiff has failed to meet even his modest burden of showing that porters, handymen, and maintenance workers employed by Defendants are similarly situated to him, this Court will not conditionally certify a collective that includes these categories of workers. Accordingly, at this stage, this Court only finds it appropriate to grant conditional certification of a collective covering employees who held the position of "superintendent" at Defendants' buildings in Manhattan.

### 4.    Equitable Tolling

Given that the statute of limitations for the potential opt-in plaintiffs normally continues to run until each plaintiff files a consent to join the lawsuit, Plaintiff asks this Court to exercise its discretion to grant equitable tolling of the statute of limitations.  (*See* Pl. Mem., at 15-16.) Specifically, Plaintiff requests that the statute of limitations be deemed tolled (1) for the periods

from March 20, 2020 to July 6, 2020, and from July 28, 2020 to September 4, 2020 (in light of

the New York State Governor's recent Executive Orders, which tolled the statutes of limitations

for state-law civil claims during the COVID-19 pandemic); and (2) for the period required for

this Court to decide the motion.  (*See id.* at 2.)  Defendant objects to both parts of this request on

the basis that there are no extraordinary circumstances warranting the application of equitable

tolling here.  (*See* Defs. Mem., at 19-20.)

In an FLSA collective action, "the limitations period continues to run for each plaintiff

until he or she files written consent with the court to join the lawsuit." *Jackson*, 298 F.R.D.

at 170.  A district court, however, "may toll the limitations period to avoid inequitable

circumstances, giving due consideration to whether the plaintiff[ has] acted with reasonable

diligence in pursuing [his] claims and whether the circumstances are extraordinary enough to

warrant equitable relief."  *Id.*; *see also McGlone v. Contract Callers, Inc*., 867 F. Supp. 2d 438,

445 (S.D.N.Y. 2012) ("[C]ourts have discretion to equitably toll the limitations period in

appropriate cases in order to avoid inequitable circumstances." (internal quotation marks

omitted)).

"The most common circumstance where equitable tolling might apply to FLSA actions is

where the defendant has concealed the existence of a cause of action from the plaintiffs. . . ."

*Mark v. Gawker Media LLC*, No. 13cv4347 (AJN), 2014 WL 5557489, at *2 (S.D.N.Y. Nov. 3,

2014).  "Some courts have held, however, that in FLSA collective actions, the potential opt-in

plaintiffs' claims may be tolled during the period the court takes to decide the conditional

certification motion."  *Viriri*, 320 F.R.D. at 355 (granting equitable tolling for period of court

delay in deciding motion); *Jackson*, 298 F.R.D. at 171 (same); *McGlone*, 867 F. Supp. 2d at 445

(same); *but see Vasto v. Credico (USA) LLC*, No. 15cv9298 (PAE), 2016 WL 2658172, at *16

27

(S.D.N.Y. May 5, 2016) (declining to apply equitable tolling for time taken by the court to

decide motion); *Mark*, 2014 WL 5557489, at *2-3 (denying request for equitable tolling upon a

finding that 11-month delay "between the date [the] [p]laintiffs filed the motion and its

resolution in [that] case was not extraordinary" (internal quotation marks omitted)).

<strong>a.      The COVID-19 Pandemic Did Not<br>Affect Filings in This Court to the Extent<br><u>Necessary To Warrant Equitable Tolling.</u></strong>

Starting with the first of Plaintiff's requests for tolling, although he points to the New

York State Governor's Executive Orders tolling various state-law filing deadlines due to the

pandemic (*see* Pl. Mem., at 16), this argument carries little weight on this motion for conditional

certification of an FLSA collective.  *See Carranza v. VBFS, Inc.*, No. 20cv2635 (PAE) (KHP),

2021 WL 1233556, at *6 (S.D.N.Y. Apr. 2, 2021).  As the Honorable Katherine H. Parker,

U.S.M.J. explained recently when this same tolling argument was made before her:

> [T]he FLSA is a federal statute and courts in this District have
> been reluctant to enact broad-sweeping pandemic
> accommodations, choosing instead to focus on the specific
> hardships of individual parties.  This Court has been operating
> during the entirety of the pandemic and there has been no bar to
> filing cases.  Indeed, the number of filings in 2020 was nearly on
> par with 2019.  Thus, COVID has not been a bar to filing claims.
> To the extent that some opt-in plaintiffs may miss the notice due to
> a change in residence or other reasons, . . . such issues are common
> and do not constitute exceptional circumstances requiring equitable
> tolling.

*Id.*  For the same reasons, this Court is unpersuaded that the statute of limitations should be

tolled in this action between the dates of March 20, 2020 through to July 6, 2020, and then again

from July 28, 2020 to September 4, 2020, and it accordingly denies this aspect of Plaintiff's

request for tolling.

**b.      Equitable Tolling Is Warranted To Avoid Penalizing
Potential Opt-In Plaintiffs For the Court's Own Delay.**

On the other hand, this Court acknowledges that there has been delay in this case

occasioned by this Court's "heavy docket[]," *McGlone*, 867 F. Supp. 2d at 445, and, in its

discretion, finds that potential opt-in plaintiffs should not be made to sacrifice any of their claims

as a result of that delay.

Plaintiff's motion for conditional certification was filed in late October 2020 and was

fully briefed in early December 2020, resulting in a greater-than-six-month gap between the time

the motion was fully submitted and the date of this decision, following which notice must be

mailed out, so that potential opt-in plaintiffs can be made aware of their right to participate in

this action.  While some courts have expressed the view that a delay of this length – or even

longer – is insufficiently "extraordinary" to warrant equitable tolling, *see Vasto*, 2016 WL

2658172, at *16; *Mark*, 2014 WL 5557489, at *2-3, this Court agrees with the reasoning set out

in *McGlone*, where the court noted that, "[w]hile plaintiffs wishing to pursue their rights cannot

sit on them indefinitely, those whose putative class representatives and their counsel are

diligently and timely pursuing the claims should also not be penalized due to the courts' heavy

dockets and understandable delays in rulings," *McGlone*, 867 F. Supp. 2d at 445 (granting

equitable tolling for six-month period of court delay after conditional certification motion was

fully briefed).

Accordingly, in the exercise of its discretion, this Court deems the statute of limitations

on the FLSA claims of the potential opt-in plaintiffs to have been equitably tolled from the date

when Plaintiff's motion was fully briefed (December 2, 2020) until the date of this Order.  *See*

*Viriri*, 320 F.R.D. at 355-56 (applying equitable tolling from the date the conditional certification

motion was fully briefed to the date of the order deciding the motion, and noting that, although

the delay came "through no fault of [the d]efendant, that [was] no reason to penalize the potential

opt-in plaintiffs for the workflow of the White Plains courthouse").

## II.      SCOPE AND FORM OF COURT-AUTHORIZED NOTICE

As part of his motion for collective action certification, Plaintiff requests that this Court

order that notice be posted and issued to all potential collective action members.  (Pl. Reply,

at 10.)  Plaintiff has submitted a Proposed Notice of Collective Action Lawsuit (*see* Ex. 35-1

("Proposed Notice")), which he requests that this Court authorize for distribution to all covered

employees (*see* Pl. Mem., at 15).  Defendants object to the scope and form of the Proposed

Notice.  (*See* Defs. Mem., at 16-18.)  In light of the above rulings, this Court will authorize

notice, but the Proposed Notice submitted by Plaintiff must be modified in certain regards,

consistent with this Order, and as discussed below.

### A.      Appropriate Notice Period

Plaintiff's Complaint would limit a proposed FLSA collective to similarly situated

employees who have worked for Defendants in the six-year period preceding the initiation of this

lawsuit (Compl. ¶ 18), and, as such, the Proposed Notice is addressed to any person who

"worked for Defendants as an employee at any time between April 14, 2014[5] and the present"

(Dkt. 35-1).  Similarly, Plaintiff's supporting memorandum of law requests that this Court order

Defendants to produce the names, Social Security numbers, titles, compensation rates, last

known mailing addresses, email addresses, all known telephone numbers, and dates of

employment for all potential collective members employed by Defendants in the six years prior

---

[5] Because Plaintiff commenced this action on April 17, 2020 (*see generally* Compl.), the actual six-year pre-filing period, if applied, would start on April 17, 2014.

to the filing of this suit, for the purpose of being able to provide them with notice of their right to opt in to the collective.  (*See* Pl. Mem., at 14.)

In seeking to direct his Proposed Notice to employees who worked outside the maximum FLSA statute-of-limitations period, it appears that Plaintiff is trying to allow for a collective action that would cover not only FLSA claims, but also any pendent state-law claims that the members might have under the NYLL.  *See* N.Y. Lab. Law § 663(3) (setting six-year limitations period for NYLL claims).  While some courts have allowed court-authorized notice to potential members of an FLSA collective to reference a six-year period, *see, e.g.*, *Winfield v. Citibank, N.A.,* 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012) (collecting cases), others have found that lengthening the period may be cause for confusion and inefficiency, *see, e.g.*, *Trinidad v. Pret a Manger*, 962 F. Supp. 2d 545, 563 (S.D.N.Y. 2013).  As the motion before this Court is only for collective certification of an FLSA opt-in collective and not class certification under Rule 23 for claims under the NYLL, this Court finds that a time-period limitation that accords with the FLSA statute of limitations would be appropriate.  *See Romero v. La Revise Assocs., L.L.C.*, 968 F. Supp. 2d 639, 648-49 (denying plaintiff's request to lengthen time period from three to six years, as no New York state class action had yet been certified).

As set forth above, the statute of limitations under the FLSA is two years, three if the defendant's conduct is found to be "willful."  (*See* Discussion, *supra*, at Section I(A)(4).)  Although the Second Circuit recently held that, at the pleading stage, mere allegations of willfulness are insufficient for a plaintiff to secure the benefits of the three-year extended limitations period, *see Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320-21 (2d Cir. 2021), at least one court in this District has observed that "the Second Circuit [in *Whiteside*] did not elaborate on the significance of its holding with respect to motions for conditional certification

under [Section] 216(b)." *Curry v. P&G Auditors and Consultants, LLC*, No. 20cv6985 (LTS) (SLC), 2021 WL 2414968, at *14 (S.D.N.Y. June 14, 2021).  Thus, even in light of *Whiteside*, the Honorable Sarah L. Cave, U.S.M.J. decided in *Curry* to "continue to follow precedent of other courts in this [D]istrict that, 'where willfulness is disputed, it is appropriate to look to the three-year period in determining the scope of a collective action.'"  *Id.* (quoting *Gaspar v. Pers. Touch Moving, Inc.*, No. 13cv8187 (AJN), 2014 WL 4593944, at *6 (S.D.N.Y. Sept. 15, 2014)).

Here, Plaintiff first alleges that "Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff . . . for all hours worked," in violation of the FLSA.  (Compl. ¶ 47.)  He then goes on to describe, including in his submitted Declaration, Defendants' alleged willful actions, including "inform[ing]" Plaintiff and other similarly situated employees that "they would never be paid overtime," while "forc[ing]" them "to work through their lunch hours . . . almost every day of the week."  (*Id.* ¶ 43; *see also* Hernandez Decl. ¶¶ 3, 6.)  In light of these assertions, this Court finds that, under the precedent applied in *Curry* and even under the standard set forth in *Whiteside* (assuming it may apply on a motion for conditional certification), the FLSA's three-year limitations period is appropriate for the purposes of Plaintiff's Section 216(b) motion.  The Proposed Notice should therefore be modified, so as to be directed to those employed as superintendents at Defendants' buildings in Manhattan from April 17, 2017, through the present.

### B.    Appropriate Opt-In Period

Plaintiff proposes that this Court approve a 90-day opt-in period for potential plaintiffs who may wish to join the collective.  (*See* 35-1.)  In similar cases, courts in this District have approved a 60-day opt-in period, which this Court finds appropriate here.  *See, e.g.*, *Racey v. Jay-Jay Cabaret, Inc.*, No. 15cv8228 (KPF), 2016 WL 3020933, at *7 (S.D.N.Y. May 23, 2016)

(finding that a 30-day opt-in period was too short "to effect [n]otice on the potential opt-in

plaintiffs"); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451-52 (S.D.N.Y.

2011) (collecting cases).  The Proposed Notice should therefore be modified, so as to set a

60-day opt-in period for potential plaintiffs.

    **C.**    <u>**Language of the Notice**</u>

    Plaintiff's Proposed Notice includes the following language concerning attorneys' fees:

> If you join this lawsuit and agree to be represented by Plaintiff
> through his attorneys, you will be represented by Lee Litigation
> Group, PLLC.  The firm is handling the lawsuit on a "contingency
> fee" basis, which means that you do not have to pay any attorneys'
> fees or expenses for this lawsuit.  If the plaintiff wins a favorable
> judgment, Lee Litigation Group, PLLC may ask the Court to award
> it up to one-third of the monetary recovery.

(Dkt. 35-1.)  Although Defendants call this language confusing (*see* Defs. Mem., at 18), this

Court is satisfied that the Proposed Notice informs potential parties that Plaintiff's counsel will

be working on a contingency-fee basis.  Thus, no changes in this regard are required.  In any

event, Defendants also request that their counsel's contact information be included on the

proposed notice along with the contact information for Plaintiff's firm under the "Getting More

Information" heading.  (*See id*).  This type of request has been granted in other cases, and this

Court finds it reasonable and appropriate here.  *See, e.g.*, *Desir v. NYU Langone Health Sys.,*

No. 19cv8144 (JPC) (SLC), 2020 WL 7631434, at *6 (S.D.N.Y. Oct. 19, 2020) (recommending

"that the contact information for [d]efendants' counsel be included in the Proposed Notice in a

separate section"), *report and recommendation adopted,* 2020 WL 7630623 (S.D.N.Y. Dec. 22,

2020); *Benavides v. Serenity Spa NY Inc.,* 166 F. Supp. 3d 474, 486-87 (S.D.N.Y. 2016) ("[T]he

notice of collective certification should include contact information for both plaintiff's and

defendants' counsel.").  Accordingly, the Proposed Notice shall be revised to include such language.

### D.    Posting of the Notice

In addition to requesting that the notice be mailed to all potential plaintiffs, Plaintiff requests that the notice be posted in "Defendants' place of business where Covered Employees are employed."  (Dkt. 34-1 (Proposed Order).)  As "[c]ourts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail," *Whitehorn,* 767 F. Supp. 2d at 449 (collecting cases), this request is granted.  Defendants are hereby directed to post the modified Notice in each of their Manhattan buildings, in a conspicuous and unobstructed location or locations likely to be seen by superintendents working in those buildings, and to maintain such postings throughout the opt-in period set by this Court.

### E.    Defendants' Production of Contact Information for Potential Opt-In Plaintiffs

To facilitate the provision of notice, Plaintiff requests that Defendants produce a "list . . . in Excel format" containing contact information ("names, Social Security numbers, titles, compensation rates, dates of employment, last known mailing addresses, email addresses, [and] all known telephone numbers") for all "Covered Employees" at any point in the six years prior to the filing of the instant suit.  (Pl. Mem., at 14-15.)  To effectuate this request, Plaintiff asks that this Court require Defendants to produce such information within 10 days of this ruling.  (*Id.*, at 9.)  Defendants, in turn, have requested that they be afforded 30 days to collect and produce any information included in this Court's Order.  (Defs. Mem., at 18.)

Courts in this District "commonly grant" requests for the production of such contact information (with the exception of Social Security numbers), in connection with the conditional

certification of an FLSA collective action.  *See Martin v. Sprint/United Mgmt. Co.*, No. 15cv5237 (PAE), 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016); *see also In re Penthouse Exec. Club Comp. Litig.*, 2010 WL 4340255, at *5 (noting that "courts often order the production of such information at the notice stage").  In line with this precedent, Plaintiff's request that Defendants be required to provide names, titles, compensation rates, dates of employment, last known mailing addresses, email addresses, and all known telephone numbers is granted, but, consistent with this Court's decision as to the appropriate scope of the collective, such production need only be made regarding potential opt-in plaintiffs who worked at Defendants' buildings in Manhattan as superintendents during the period from April 17, 2017 to the present. *See Ji Li v. Ichiro Rest. Inc.*, No 14cv10242 (AJN) (JCF), 2015 WL 6828056, at *5 (S.D.N.Y. Nov. 5, 2015) (where the court found that plaintiffs had only established that a group of delivery workers was similarly situated, defendants would only be ordered to produce the requested information for the delivery workers).  This information should be provided by Defendants in an electronic "computer-readable" format (*e.g.*, a Microsoft Excel spreadsheet), within 30 days of the date of this Order.

At the same time, this Court concludes that requiring the disclosure of Social Security numbers is unnecessary.  *See Benavides*, 166 F. Supp. 3d at 489.  More particularly, this Court declines to approve the production of the Social Security numbers for the potential collective action members before Plaintiff has demonstrated, with specificity, the necessity of receiving such sensitive information.  *See, e.g., Garcia v. Spectrum of Creations Inc.*, 102 F. Supp. 3d 541, 551 (S.D.N.Y.2015) (denying "production of Social Security numbers . . . for the purpose of using a 'skip trace' service to contact employees whose mailings are returned as undeliverable," finding that "it is premature to require such information for the entire group when it is necessary

only for what may be a small subset who cannot be reached" and providing that "this issue should revisited" when there is more information about "the efficacy of whatever measures are chosen to reach the similarly situated employees"); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 60 (S.D.N.Y. 2009) ("The [c]ourt does not see the need to direct the disclosure of [S]ocial [S]ecurity numbers at this stage.  If Plaintiffs find that a large number of notices are returned as undeliverable, the [c]ourt can consider the matter at that time.").  Plaintiff's request for the production of Social Security numbers is therefore denied without prejudice to renew, only upon a specific showing that this information is reasonably needed to facilitate the opt-in process.

## III.    PLAINTIFF'S MOTION TO COMPEL

As noted above, soon after Plaintiff filed his conditional certification motion (and even before that motion was fully briefed), he moved to compel Defendants' production of Rule 23 class discovery.  (*See* 11/30/20 Lee Ltr.)  Plaintiff particularly sought the disclosure of:

> (1)    contact information, as well as wage-related information and documents, "for putative Rule 23 Class and Expanded FLSA Collective Members across Defendants['] locations,"

> (2)    "e-discovery relating to the wage-and-hour and retaliation issues in the case"; and

> (3)    "documents relating to Plaintiff and potential collective plaintiffs' attempts to unionize."

(*Id.*, at 2-3.)  This Court addresses each of these requests, in turn.

### A.    Rule 23 Class Discovery

Plaintiff first argues that he is entitled to the production of contact information for, and documents relating to the compensation of, all "putative Rule 23 Class and Expanded FLSA Collective Members" (the "Covered Employees"), meaning – based on his proposed Rule 23 class definition – all former and current superintendents, porters, handymen, and maintenance

36

workers employed by Defendants during the last six years.  (11/30/20 Lee Ltr., at 2; *see also*

Dkt. 41-1 (Defs. Responses to Pl. Requests for Production of Documents).)  In other words, in

anticipation of a motion for Rule 23 class certification on NYLL claims, Plaintiff is seeking

discovery as to a far broader group than the collective that this Court is now conditionally

certifying.

> For the so-called Covered Employees, Plaintiff seeks the following types of information:

> > (1)   names, addresses, email addresses, and phone numbers; as
> > well as

> > (2)   compensation-related materials, specifically including:
> > employee handbooks or manuals, journals, transcripts,
> > diaries, transaction reports, pay stubs, pay checks, wage
> > papers, punch-clock reports, documents, papers, job
> > applications, invoices, emails, memoranda, notes, phone
> > message slips, or any material referencing Covered
> > Employees' wages, salaries, spread of hours pay, rate, time
> > sheets, and methods of pay, hours worked, job duties,
> > general work policies they were to follow, arrival/departure
> > from work, breaks taken, or any matters concerning their
> > employment with Defendants.

(Defs. Responses to Pl. Requests for Production of Documents, at Requests No. 2-4.)

Plaintiff argues that this discovery is relevant because it will allow the Court to determine

whether he has satisfied Rule 23 when he moves for class certification.  (*See* 11/30/20 Lee Ltr.,

at 2.)  Defendants, for their part, contend that, at this juncture, these requests are premature,

overly burdensome, and not proportional to the needs of the case.  (12/3/20 Poulos Ltr., at 2-4.)

Upon review of the parties' submissions, this Court grants Plaintiff's request for Rule 23

class-wide discovery, in part.

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged

matter that is relevant to any party's claim or defense."  A matter is relevant if it encompasses

"any matter that bears on, or that reasonably could lead to other matter that could bear on, any

issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351

(1978).  When a party seeks to certify a class under Rule 23, "a district judge has ample

discretion to circumscribe . . . the extent of discovery concerning Rule 23 requirements."  *In re*

*Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).  "Pre-certification discovery is

often necessary in order to provide the court with sufficient information to determine whether

certification is appropriate" considering the requirements set out in Rule 23.  *Rahman v. Smith &*

*Wollensky Rest. Grp., Inc.*, No. 06cv6198 (LAK) (JCF), 2007 WL 1521117, at *3 (S.D.N.Y.

May 24, 2007).  At the same time, however, "the defendant must be protected from discovery

which is overly burdensome, irrelevant, or which invades privileged or confidential areas."  *Id.*

(internal quotation marks and citations omitted); *see Beaton v. Verizon New York, Inc.*,

No. 20-CV-672 (BMC), 2020 WL 6449235, at *2 (E.D.N.Y. Nov. 3, 2020).  Further, "[s]uch

discovery. . . must generally stop short of the merits of class claims."  *Benavides*, 166 F. Supp.

3d at 491; *see Calabrese v. CSC Holdings, Inc.*, No. 02-CV-5171 (DLI) (JO), 2007 WL 749690,

at *5 (E.D.N.Y. Mar. 7, 2007) (noting that discovery should be limited so that Rule 23 hearing

does not "'extend into a protracted mini-trial of substantial portions of the underlying

litigation.'") (quoting *In re Pub. Offerings*, 471 F.3d at 41)).

Under this framework, courts have addressed whether the production of names and

contact information of putative class members is appropriate prior to class certification.  *See,*

*e.g., Beaton*, 2020 WL 6449235, at *3; *Benavides*, 166 F. Supp. 3d at 491-92.  As a general

matter, "contact information of the broader potential class of defendants' employees may be

discoverable where it is relevant to demonstrating satisfaction of Rule 23 requirements."

*Benavides*, 166 F. Supp. 3d at 491 (citing *Gordon v. Kaleida Health*, No. 08-CV-378S(F), 2012

WL 432885, at *2-3 (W.D.N.Y. Feb. 9, 2012) ("It is well-established that in wage and hour

38

cases, pre-class certification discovery of putative class member contact information is permissible to assist in demonstrating that representative plaintiffs can satisfy Rule 23 criteria.")).  Yet, courts have sometimes "refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification." *Dziennik v. Sealift, Inc.*, No. 05-CV-4659 (DLI) (MDG), 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006) (collecting cases).  Other courts "have denied such a request without prejudice, finding it potentially 'cumulative' and thus premature, where a plaintiff has not demonstrated that '[p]laintiffs' ability to demonstrate commonality, predominance and typicality will . . . necessarily require obtaining discrete employment information from any individual class members.'" *Benavides*, 166 F. Supp. 3d at 491 (quoting *Gordon*, 2012 WL 432885, at *4 (finding plaintiffs had not established the threshold question of "whether such contact information is needed by Plaintiffs at this time or whether Plaintiffs may be able to meet their burden to establish Rule 23 requirements by thorough use of standard discovery devices") and citing *Jenkins v. TJX Co.*, No. 10-CV-3753 (ADS) (WDW), 2011 WL 1563677, at *3 (E.D.N.Y. Apr. 25, 2011) (finding "plaintiff's request for contact information of putative Rule 23 class members [to be] premature" where plaintiff "failed to articulate a sufficient basis upon which this discovery is necessary at this time," given that it was possible that "plaintiff could collect sufficient evidence through properly drafted discovery requests," but noting that "[p]laintiff may renew his motion at a later stage of these proceedings, if necessary") (internal citations and quotation marks omitted)).

        As an initial matter, here, based on this Court's grant of conditional certification of an FLSA collective of all superintendents who worked at Defendants' buildings in Manhattan

within three years of the Complaint, this Court finds that Plaintiff is entitled to the production of contact information and documents relating to compensation for those same employees.

As for Plaintiff's requests for contact information for all Covered Employees, as well as a broad swath of compensation-related materials, Plaintiff argues that this more expansive discovery is needed because it will likely support his claims that the putative class meets Rule 23's requirements. (*See generally* 11/3020 Lee Ltr., at 2.) This is the same type of conclusory assertion that was raised by the plaintiff on a motion to compel class discovery in *Benavides*, 166 F. Supp. 3d at 491-92 – in which the plaintiff was represented by the same counsel as represents Plaintiff here – and this Court finds the handling of the issue by the Honorable James L. Cott, U.S.M.J., in *Benavides*, to have been thoughtful and instructive.

First, as in *Benavides*, this Court concludes that Plaintiff is not entitled to the production of contact information for all putative Rule 23 class members at this time because he has not made any "showing that communication with individual members of the putative class is necessary to support [his] assertions under Rule 23." *Benavides*, 166 F. Supp. 3d at 492; *see also Beaton*, 2020 WL 6449235, at *2 (denying plaintiff's request for class-wide contact information where he had not first sought discovery through other means). This request is therefore denied, without prejudice to renew, following Plaintiff's "use of the typical range of discovery devices and a demonstration that [he] will not be able to meet [his] burden under Rule 23 without direct contact with individual potential class members." *Id.; see, e.g., Gordon*, 2012 WL 432885, at *5 (denying Rule 23 precertification contact information without prejudice to renewal following plaintiffs' "exercise of standard discovery devices"); *Jenkins,* 2011 WL 1563677, at *3 (same).

Second, although Plaintiff's arguments in support of the additionally requested class discovery are fairly conclusory, this Court – again like the court in *Benavides* – finds that

Plaintiff *is* entitled to the production of compensation-related documents for at least a significant number of the Covered Employees. Specifically, this Court finds that documents reflecting hours worked and wages paid should be produced not only for superintendents, but also for all porters, handymen, and maintenance workers, to the extent they were employed to work in Defendants' buildings in Manhattan, dating back to six years prior to the Complaint (based on the NYLL statute of limitations) because that information "would likely support findings of commonality, typicality, numerosity, that the class is identifiable and ascertainable, and that common questions predominate over any individual issues as required by Rule 23." *Benavides*, 166 F. Supp. 3d at 492. This Court finds it reasonable to limit Defendants' production in this regard to Manhattan (as opposed to all boroughs of New York City), given the breadth of the request and the paucity of Plaintiff's allegations regarding his knowledge of Defendants' pay practices on a much wider scale. Moreover, in light of Defendants' stated concern that Plaintiff's request for compensation-related materials is, at general matter, overly burdensome and not proportional to the needs of the case (*see* 12/3/20 Poulos Ltr., at 4), this Court directs the parties to confer in good faith regarding the lengthy list of compensation-related materials that Plaintiff seeks, so as to attempt to narrow the scope of that request prior to Defendants' production. If the parties are unable to agree on the scope of production after full, good-faith conference, they may return to this Court, with detailed explanations as to why particular compensation-related documents should, or should not, be held discoverable.

**B.    E-Discovery**

As to e-discovery, the parties dispute the appropriate search terms for ESI. (*See* 11/30/20 Lee Ltr., at 3; 12/3/20 Poulos Ltr., at 4-5.) "A 'judge overseeing discovery is granted broad discretion to manage the discovery process, including determinations regarding which search

terms a party should apply.'" *Beaton,* 2020 WL 6449235, at *4 (quoting *Emanuel v. Gap, Inc*.,
No. 19cv3617 (PMH), 2020 WL 5995134, at *3 (S.D.N.Y. Oct. 9, 2020)).  "Collection, review,
and production of ESI," however, "presents special challenges and requires cooperation between
opposing counsel and transparency in all aspects of preservation and production . . . ."
*Winfield v. City of New York*, No. 15cv05236 (LTS) (KHP), 2017 WL 5664852, at *7 (S.D.N.Y.
Nov. 27, 2017) (quoting W*illiam A. Gross Const. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co*., 256
F.R.D. 134, 136 (S.D.N.Y. 2009)).  Courts, therefore, "encourage and expect cooperation among
counsel when it comes to crafting search terms."  *Beaton*, 2020 WL 6449235, at *4 (internal
quotation marks and citation omitted).

As in the recent case of *Beaton*, 2020 WL 6449235 (cited by Defendants at pages 4-5 in
the 12/3/20 Poulos Ltr.), where Plaintiff's counsel in this case was similarly counsel of record,
Plaintiff here has failed to engage in the level of cooperation that this Court expects and requires.
Plaintiff in this case claims that Defendants have "refused to provide any e-discovery" (11/30/20
Lee Ltr., at 3), yet the parties' submissions suggest otherwise.  It appears that, nearly two weeks
before Plaintiff filed the instant motion to compel, Defendants' counsel stated during a
telephonic conference that his clients were willing to reconsider the production of certain emails
in their custody or control, and he requested additional time (in light of the holidays) to formally
provide a response.  (*See* 12/3/20 Poulos Ltr., at 1-2.)  Although Plaintiff's counsel apparently
expressed an initial willingness to afford Defendants further time to respond (*see id*.), on
November 30, Plaintiff proceeded to file the motion to compel, without waiting for Defendants'
response.  This conduct fails to satisfy this Court's good-faith conference requirement (*see*
Individual Rules § I(C)), and, without adequate conference between the parties, this Court finds
that the parties' dispute is not ripe for judicial resolution.  As Plaintiff "cannot expect that [the

C]ourt will step in [now] and address an issue it is [presently] ill-suited to resolve," *Beaton*, 2020 WL 6449235, at *4, Plaintiff's motion to compel production of ESI is denied without prejudice, and, within the next two weeks, counsel are directed to meet and confer in the utmost good faith, in order to develop appropriate search terms or narrow the dispute between them before seeking further judicial intervention.

### C.    Document Production Relating to Employees' Unionization Efforts

Lastly, with respect to Plaintiff's request that this Court compel Defendants to produce documents relating to his and other employees' alleged unionization efforts, this Court repeats that it will not intervene in a discovery dispute that has not been the subject of full, good-faith conference between counsel.  As it is again plain from the parties' submissions that they have not engaged in "substantial efforts to confer" about the documents at issue (Individual Rules § I(C)), this Court denies this aspect of Plaintiff's motion to compel, without prejudice, and again directs the parties to meet and confer within the next two weeks in an effort to resolve this particular dispute.

### IV.    THE PARTIES' JOINT EXTENSION REQUEST

In light of the above rulings, this Court grants the parties' joint request for an extension of time for Plaintiff to file a motion for class certification under Rule 23, and for the parties to complete discovery.  (Dkt. 46.)  Plaintiff's motion for class certification shall be filed no later than August 30, 2021, and the deadline for the completion of fact discovery shall be extended to September 1, 2021.  No later than July 30, 2021, the parties are directed to submit to this Court a joint status report on the progress of discovery and the potential for the settlement of this action. In addition, within one week of the Court's resolution of Plaintiff's anticipated motion for Rule 23 class certification, the parties are directed to inform this Court as to whether they plan to

engage in expert discovery, and, if so, to submit a jointly proposed schedule for the completion

of such discovery.

## <u>CONCLUSION</u>

For all of the foregoing reasons, and as set forth herein:

(1) Plaintiff's motion for conditional certification of an FLSA collective action and Court-authorized notice (Dkt. 34) is granted in part and denied in part;

(2) Plaintiff's motion to compel discovery (Dkt. 41) is granted in part and denied in part; and

(3) The parties' joint request for an extension of time for Plaintiff to file a motion for Rule 23 class certification and to complete discovery (Dkt. 46) is granted.

Plaintiff's motion for Rule 23 class certification shall be filed no later August 30, 2021.

Fact discovery shall be completed no later than September 1, 2021.  The parties are directed to

submit to this Court a joint status report on the progress of discovery and the potential for the

settlement of this action no later than July 30, 2021.  The parties are further directed to submit a

joint letter within one week of the Court's resolution of Plaintiff's anticipated Rule 23 class

certification motion, with a proposed plan for expert discovery, if any.

In light of the rulings herein, the Clerk of Court is directed to close Dkts. 34, 41, and 46

on the Docket of this action.

Dated:  New York, New York
  June 18, 2021

        SO ORDERED

       _____
       DEBRA FREEMAN
       United States Magistrate Judge

Copies to:

All Counsel (via ECF)